## FORD et al. v. GRAND UNITED ORDER OF ODD FELLOWS OF STATE OF TEXAS.

### No. 2229.

Court of Civil Appeals of Texas. Beaumont.

May 25, 1932.

Rehearing Denied June 1, 1932.

D. E. O'Fiel, of Beaumont, for appellants.

Ewell Strong, Jr., and Orgain, Carroll & Bell, all of Beaumont, for appellee.

O'QUINN, J.

The Grand United Order of Odd Fellows of the State of Texas is a fraternal benefit society organized and existing under and by virtue of chapter 8, title 78, of the Revised Statutes of the State of Texas, doing business under the lodge system, with its domicile at Houston, Harris county, Tex. June 12, 1919, it had a local lodge at Kountze, Tex., being No. 3991. On about that date it issued its endowment policy No. 13048 to Maggie Limbrick in the sum of $300, payable to Ranzy Limbrick, husband of Maggie Limbrick. At the time said policy was executed and delivered, Maggie Limbrick was accepted as a member of Grand Household of Ruth, No. 13, the female branch of said organization. Thereafter, about August 15, 1927, her husband having died, at the request of Maggie Limbrick said certificate was canceled and a new certificate, No. 13048, was issued, payable to Ethel R. Evans, daughter of Maggie Limbrick. This certificate was in the sum of $300, and also contained a burial benefit clause in the sum of $75. This new certificate was delivered to and accepted by Maggie Limbrick September 28, 1927. Maggie Limbrick died April 8, 1928. At that time all dues and assessments due upon said policy had been paid and said certificate was in full force and effect, and thereupon the sums named in said certificate became due and payable to said Ethel R. Evans. April 9, 1928, Ethel R. Evans transferred and assigned the said policy of insurance to Beaumont Citizens' Mortuary, which was owned and operated by appellant A. E. Dixon Ford, for a valuable consideration, and said Ford gave notice to said Grand United Order of Odd Fellows of the State of Texas of said assignment.

July 5, 1928, A. E. Dixon Ford, joined by her husband, claiming to be the holder and owner of the proceeds of said insurance policy by the assignment of same to her by Ethel R. Evans, the beneficiary named in the policy, brought suit in the county court at law of Jefferson county, Tex., against the Grand United Order of Odd Fellows of the State of Texas, to recover the sums stated in the policy. Citation was issued and served on Cliff Davis, who was then the Noble Grand of Mitchell Lodge No. 10391, at Beaumont, Tex., one of the local and subordinate lodges of said Grand United Order of Odd Fellows of the State of Texas, said Cliff Davis being the local officer in charge of said Mitchell Lodge. He was served as the local agent of the defendant order.

No answer was filed by the defendant order. October 8, 1928, judgment was rendered by default in favor of A. E. Dixon Ford against the defendant, Grand United Order of Odd Fellows of the State of Texas, in the sum of $375.

The agreed statement of facts states that said Ford was in no way related to deceased, Maggie Limbrick, nor had any insurable interest in her life; that the insurance policy was transferred by the named beneficiary, Ethel R. Evans, to said Ford in consideration of the payment by said Ford of the burial expenses incurred in the interment of Maggie

Limbrick, which was the only means with which the burial service could be procured and but for which the burial could not have been made in the manner desired by said Ethel R. Evans; that the assignment was before the burial, and the funeral supplies and services rendered were reasonably worth the sum of $375.

The Grand United Order of Odd Fellows of the State of Texas at various times obtained from the commissioner of insurance of the state of Texas a certificate and license to do business as a fraternal benefit society, and duly designated the commissioner of insurance of the state of Texas and his successors in office as its true and lawful attorney upon whom all legal process in actions against it should be served. In the suit to recover herein no service was had upon the commissioner of insurance. It was also shown that the defendant order was authorized and did issue insurance policies in the sum of $1,000.

Appellee refused to pay the amount of the insurance policy to appellant Ford, but, on June 22, 1928, did pay to Ethel R. Evans, the beneficiary in the policy, the sum of $300, and at the time of such payment it had full notice of the assignment of said policy and the claim to the benefits thereof by said Ford.

March 12, 1930, appellee filed suit to review the judgment rendered against it by default on October 8, 1928, on the grounds that said judgment was void because appellee had not been served with notice therein and had no notice of the pendency of the suit until after the time for asking for a new trial or taking an appeal or writ of error against said judgment had expired; that its first knowledge of the existence of the suit and judgment was in May, 1929, when an execution was placed in the hands of the sheriff of Harris county, Tex., seeking to enforce said judgment, and set up that it had a good and perfect defense against appellants' demand, in that the insurance policy was not assignable because prohibited by the by-laws of said order and so written in the policy, wherefore said assignment was of no force and could not be enforced.

The court consolidated the two causes, the one by appellee to review and set aside the default judgment against it, and the other by appellants for judgment against appellee on the assigned policy, and the causes were tried before the court without a jury, and judgment rendered setting aside and vacating said default judgment. Trial was then had upon appellants' suit for recovery on the assigned policy and judgment entered that appellants recover in the sum of $75, the burial benefit specified in the policy, and that, as to the $300 specified as the principal amount in the certificate, appellants take nothing, and that appellee pay all costs incurred in both suits. This appeal is from that judgment.

The questions to be determined are: (1) Was legal service had on appellee by serving citation on Cliff Davis, an officer of one of its local lodges, and (2) was the certificate or policy assignable? The statute, article 4843, R. S. 1925, provides that fraternal benefit societies shall designate and appoint the commissioner of insurance of the state of Texas, and his successors in office, the true and lawful attorney of such societies upon whom all legal process in any action against them shall be served, and that legal process shall not be served upon any such society in any other manner. Service not being had on the commissioner of insurance, but on an officer of a local lodge, was not in compliance with the law and, therefore, void, and the court was without authority to enter the default judgment. Fort Worth Mut. Ben. Ass'n v. Petty (Tex. Civ. App.) 283 S. W. 620; Fort Worth Mut. Ben. Ass'n v. Weathers (Tex. Civ. App.) 291 S. W. 267; Wonderful Workers of the World Ben. Ass'n v. Hamilton (Tex. Civ. App.) 298 S. W. 450.

But appellants contend that article 4857, R. S. 1925, specifically exempts appellee from the provisions of article 4843, and, therefore, service might be had on its local agent, Cliff Davis. This contention is not sound. Examination of article 4857 discloses that the provisions of chapter 8 of title 78 of the Revised Civil Statutes are not applicable to "grand or subordinate lodges of Masons, Odd Fellows or Knights of Pythias (exclusive of the insurance department of the supreme lodge Knights of Pythias) and the Junior Order of the United American Mechanics (exclusive of their beneficiary degree or insurance branch) or societies which limit their membership to any one hazardous occupation nor to similar societies which do not issue insurance certificates nor to an association of local lodges of a society now doing business in this State which provides death benefits not exceeding five hundred dollars to any one person. * * *" The exemption from the statute is claimed by appellants as in favor of the "Odd Fellows." It is a matter of common knowledge, and, therefore, must be held to be judicially known, that there exists more than one order of Odd Fellows in this state. One, composed of colored people, known as the "Grand United Order of Odd Fellows of the State of Texas," which is the defendant herein. If the Legislature had intended to exempt this order from the provisions of chapter 8 of title 78, which embraces all of the statutes relative to the organization and operation of fraternal benefit societies, it would have specifically named it. We think it without question that the "Odd Fellows" mentioned in the statute referred to the "Independent Order of Odd Fellows," the well-known organization composed of white people. Furthermore, it appears from said statute that it was not the intention to exempt

the insurance department of any of the orders named as exempt, it being commonly known that the Independent Order of Odd Fellows, the one composed of white people, has no insurance department, and the insurance departments of the others named being excepted. Moreover, defendant society when it organized recognized that it came within the statute and at the time it secured permission to do business complied with the statute and designated the commissioner of insurance as its attorney upon whom service of process could be made. It still recognizes that it is such fraternal benefit society as is subject to the law and claims its right to protection under same. It is not believed that a third party can waive or question the application of the law to it, as is here attempted.

Appellants cite Bankers' Union of the World v. Nabors, 36 Tex. Civ. App. 38, 81 S. W. 91, as supporting their contention that service on a local agent or officer of appellee is sufficient to support a default judgment. That case was decided under the law enacted May 12, 1899 (Gen. Laws, c. 115, p. 195), and did not contain the provision found in article 4843 that "legal process shall not be served upon any such society except in the manner provided herein." The Act of May 12, 1899, was repealed by the Act of May 1, 1909 (Acts 1909, 1st Called Sess., c. 36), which in turn was repealed by the Act of April 2, 1913 (Acts 1913, c. 113, p. 220) the present statute, containing the provision quoted. The cited case has no application under the present law. The judgment setting aside and vacating the default judgment was proper.

The next question is, was the policy assignable? It contained the following: "This certificate is issued and accepted subject to all the conditions on the back hereof, and subject to all of the laws, rules and regulations of this Fraternity, now in force or that may hereafter be enacted, and shall be null and void if said member does not comply with all of said conditions and all of said laws, rules and regulations of the Endowment Department of the Grand United Order of Odd Fellows that are now in force or may hereafter be enacted."

Among the conditions referred to on the back of the certificate, were the following:

"5th: Be it further provided that no suit shall be brought or commenced upon this certificate unless process is served on the Commissioner of Insurance of the State in which is located the lodge or household of which insured was a member at the time of his or her death. Be it also provided that no legal proceedings for recovery under this certificate shall be brought within 90 days after proof of death has been received by the Secretary of the Endowment Department, and no suit shall be brought upon this certificate unless said suit is brought within one year from the time when the right of action accrues."

"7th: The burial benefits payable by this department shall be $75.00.

"8th: Whereas, from many complaints coming up from all parts of this jurisdiction, concerning the methods used by Undertakers, not only to secure their pay for burial of members of the Order, but it is further charged that during their hour of grief, they are persuaded to spend all the money from the policy for funerals when they are not able to do so, leaving the widows and orphans penniless, and to secure their pay by taking power of attorney and making the Endowment Department of the Order a collecting agency for the Undertakers. Therefore, be it Resolved,

"That no assignment of, or power of attorney over the policy of a deceased member, shall be recognized or considered and the certificate be payable to the beneficiary named in the certificate or policy and shall be absolutely non-negotiable and further be it resolved, that this law shall apply to all certificates or policies now in force or that may be issued in the future. All laws and parts of laws in conflict with this law are hereby repealed. Adopted August, 1925."

The face of the policy or contract was signed by the insured, as was also the conditions on the back of the policy. As before stated, the policy was assigned by Ethel R. Evans, the beneficiary, to appellant Ford after the death of insured and before the burial of the insured, and notice of the assignment given appellee before appellee paid the $300 to the beneficiary.

■■ It is generally held that in cases of fire insurance assignment after loss may be made, but it is contended that this rule does not apply in cases of life insurance where the insurance contract or the by-laws of the association or society prohibit assignment of the policy. That this is true during the life of the insured seems well settled, but after the death of the insured, when the promise to pay has matured, we do not think the rule applies. The promise to pay the amount of the policy then is no longer contingent, but is a debt due and payable to the beneficiary, the right to which is fully and completely vested in the beneficiary. In such case the by-laws of the association or society forbidding assignment of the policy have no application. We think sound reason and principle support this holding and that a rule or by-law of the society forbidding assignment of the policy after the death of the insured is unreasonable and void in that it is an unreasonable restriction on the right to contract, and, further, would be in contravention of article 569, R. S., which authorizes the holder of a nonnegotiable written instrument to "transfer his interests therein to another." The right to own and have exclusive dominion over private property is a sacred one, and it is a universal principle of law that the right to own property carries

with it the right to control and dispose of same in such manner as not to contravene the statute law or public policy. We have no statute forbidding the assignment by the beneficiary in a life insurance policy of such policy after the death of the insured, at which time the promise to pay has fully matured and the beneficiary is entitled to demand and receive the amount of the policy, nor can such assignment be said to be against public policy. In this circumstance the right of the owner of the debt to contract with reference to the payment of the amount of the policy or to transfer same is free from the attempted restrictions of the society's by-laws. 14 R. C. L., § 182, p. 1004; 45 C. J., p. 68; 19 A. & E. Ency. Law (2d Ed.) p. 87; Michigan Mut. Ben. Ass'n. v. Rolfe (Lyon v. Rolfe), 76 Mich. 146, 42 N. W. 1094; Briggs v. Earl, 139 Mass. 473, 1 N. E. 847; Mower v. Assurance Ass'n, 1 Pa. Super. Ct. 170; Imperial Fire Ins. Co. v. Dunham, 117 Pa. 460, 12 A. 668, 2 Am. St. Rep. 686; Note 87 Am. St. Rep. 487.

In 14 R. C. L., § 182, supra, it is said: "A provision in a policy against assignment does not apply to an assignment after loss and a specific provision against such assignment is null and void, as inconsistent with the covenant of indemnity and contrary to public policy."

In treating of mutual benefit associations, 45 C. J. p. 68 says: "Assignment by Beneficiary. The beneficiary may assign the certificate if he has a vested interest in it, and hence may assign it after the member's death."

It is stated in 19 A. & E. Ency. Law (2d Ed.), p. 87, that "a policy may be assigned after death of the insured and the maturity of the claim, and this though the policy may have been unassignable during his lifetime."

Michigan Mut. Ben. Ass'n v. Rolfe (Lyon v. Rolfe), supra, was a case in which the proceeds of a mutual benefit association insurance policy were in contest. In discussing the right to assign, the court, 76 Mich. 146, 42 N. W. 1094, 1096, on page 1096 said: "Had her husband died first, she could at any time before payment to her, have assigned her interest, which would by that event have become vested. * * * "

Note, 87 Am. St. Rep. 487, supra, is a discussion of the validity of an assignment of a life insurance policy. At page 487 of 87 Am. St. Rep., it says: "A provision in a policy by which it is sought to restrict the assignment of the instrument is not applicable when once the loss has occurred or the policy has matured. The claim then becomes a debt, and is no longer subject to the restrictions of the policy"—citing Briggs v. Earl and Mower v. Assurance Ass'n, supra, which directly sustain the rule.

We have stated supra that we have no statute forbidding the assignment by the beneficiary in a life insurance policy of such policy after the death of insured. Appellee insists that article 5068a, Vernon's Ann. Civ. St., forbids the assignment of the policy by the beneficiary at any time, and that, under said article, such assignment is void. Article 5068a was passed by the Fortieth Legislature, and is chapter 234 of the General Acts of said Legislature (1927), found on page 348. The heading of the chapter reads: "Exempting from Execution, Attachment, Garnishment or Other Process Insurance Payable in Installments." The Act reads:

"Section 1. No money or benefits of any kind to be paid or rendered on a weekly, monthly or other periodic or installment basis to the insured or any beneficiary under any policy of insurance issued by a life, health or accident insurance company, including mutual and fraternal insurance, or under any plan or program of annuities and benefits in use by any employer, shall be liable to execution, attachment, garnishment or other process or be seized, taken or appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of the insured or or of any beneficiary, either before or after said money or benefits is or are paid or rendered, except for premiums payable on such policy or a debt of the insured secured by a pledge thereof.

"Sec. 2. Wherever any policy of insurance or plan or program of annuities and benefits mentioned in Section 1 of this Act, shall contain a provision against assignment or commutation by any beneficiary thereunder of the money or benefits to be paid or rendered thereunder, or any rights therein, any assignment or commutation or any attempted assignment or commutation by such beneficiary of such money or benefits or rights in violation of such provision shall be wholly void.

"Sec. 3. The fact that there are no provisions of law by which beneficiaries in life, health and accident insurance policies and employees under annuities and benefits plan of their employers are secured against creditors in the collection and enjoyment of the benefits and payments provided for them, creates an emergency and an imperative public necessity that the rule requiring bills to be read on three several days be suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

It is not believed that the statute has application to the facts of the instant case. It is obvious, we think, that the statute was passed for the protection of compensation insurance or benefits under insurance policies that were to be paid in installments, and to protect the persons to whom such moneys were payable from attacks by creditors in the collection and enjoyment or use of same. We do not believe that the statute can be construed to mean that, after a sum of money has become due and payable in full, the person

entitled to receive same cannot then voluntarily assign or order same to be paid to a creditor in payment of a debt. The language of the statute, and especially the emergency clause which states the reason for the statute, supports our holding.

The judgment refusing appellants recovery for the amount of the policy, $300, is error, and, as the facts are without dispute, said judgment is reversed and judgment here rendered for appellants. The costs will be taxed against appellee.

Reversed and rendered.