Don R. BLYTHE, Appellant,

v.

CITY OF GRAHAM et al., Appellees.

No. 15829.

Court of Civil Appeals of Texas.
Fort Worth.

June 14, 1957.

Tom M. Miller, Graham, for appellant.

Rodgers and Stephens, Graham, for appellee City of Graham.

Jack Q. Neal, Graham, Lattimore & Lattimore, and H. S. Lattimore, Fort Worth, for appellees Newton-Burkett, Inc., and Harry Newton, Inc.

MASSEY, Chief Justice.

█ The background of the matter presented on the appeal is detailed in Blythe v. City of Graham, Tex.Civ.App., Fort Worth, 1956, 287 S.W.2d 527, writ refused, n. r. e. It is apparent from that opinion that at the time Mr. Blythe filed his suit for declaratory judgment and for damages growing out of trespass that the named defendants were the only owners of the lots and improvements in the block of the subdivision across from the Blythe house. It was as to this property that the City of Graham had attempted by way of an ordinance to replat the lots and ease the applicable restrictions in effect thereon at the time Blythe purchased his own premises. Mr. Blythe lost his case in the trial court and won it in the appellate courts. It is apparent from the opinion in the case that the conclusion reached was that the "ordinance" by which the city attempted to replat a part of the subdivision and ease the restrictions applicable thereto amounted to no more than a written declaration vacating a prior plat placed of record by a private owner, and would be controlled by the provisions of Sec. 5, Art. 974a, Vernon's Ann.Civ.St.

The parties defendant to Blythe's original action were not deterred in the marketing of the lots and improvements placed thereon as result of the prior proceeding and appeal. Indeed, they proceeded to sell the same, and prior to the time Blythe's case came on for trial after his victory in the appellate courts defendants Newton-Burkett, Inc., and Harry Newton, Inc., no longer owned any of the property, having successfully disposed of all the replatted lots formerly owned to individual home purchasers. Some of the property still belonged to the City of Graham. The status of Blythe's suit as against Newton-Burkett, Inc., and Harry Newton, Inc., was one whereby they were retained as parties solely because Blythe was claiming damages of them as a result of trespass during their period of ownership.

Immediately prior to the beginning of trial in the court below on the second occasion, Blythe took a nonsuit in so far as his claim for relief included any prayer for damages against the foregoing defendants, and against the City of Graham. When the nonsuit as to damages was taken, Newton-Burkett, Inc., and Harry Newton, Inc., were in effect dropped from the case by Blythe, for in the suit there no longer existed any justiciable controversy between them and Blythe. A decree dismissing them as parties, or dismissing Blythe's suit as to them, was accordingly in order. The order which was entered in the trial court accomplished this, and we need not at this point concern ourselves with the manner in which it was done. It should be clear that such defendants cared not whether Blythe got the declaratory judgment he sought for it could not affect them. They might again become interested in the title to the property in the subdivision formerly owned by them, but conveyed to the new home owners, should Blythe have been seeking a judgment which would cloud or affect such titles— assuming that they had been warranted to the new home owners,—but their interest would not become reinvested so long as Blythe had no suit against the current owners, for it would be only in respect to their claim and not Blythe's (other than through them) that Newton-Burkett, Inc., and Harry Newton, Inc., would stand legally exposed.

Following the event when Blythe took a nonsuit in so far as his claim for relief included any prayer for damages, Newton-Burkett, Inc., and Harry Newton, Inc., filed

a verified pleading purporting to set up the want of necessary parties and praying that the suit against them be abated. The trial court held that the property owners who had received title to the lots within the replatted block in question should be joined, and gave Blythe ninety days within which to join said persons as parties defendant. The ninety day period passed, during which Blythe either failed or declined to add parties, and shortly following the expiration of such time an order was entered dismissing the suit. The dismissal operated not only to eliminate Blythe's suit against Newton-Burkett, Inc., and Harry Newton, Inc., as to which defendants we have already demonstrated their entitlement to be released from the case, but it also served to eliminate Blythe's suit against the City of Graham.

 Of course, the dismissal was without prejudice. The trial court obviously dismissed the suit because of the nonjoinder of the property owners other than the city. These owners were proper parties but not indispensable parties. A "proper party" to an action or proceeding denotes "a party without whom the cause might proceed, but whose presence will allow a decree or judgment more clearly to settle the controversy among all of the parties." 67 C.J.S. Parties § 1, Definitions and Classes, p. 889, sub. f(1), Proper Parties. It would not have been error for the trial court to have proceeded with a trial absent the parties he desired to have joined, for such parties would not have been prejudiced thereby since they would not have been bound by the judgment. Crawford v. Thomas, Tex.Civ. App., Waco, 1950, 229 S.W.2d 80, error refused.

 But within the limitations of Sec. 6, Art. 2524–1, Vernon's Ann.Civ.St., a trial court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding. Zamora v. Zamora, Tex.Civ.App., El Paso,

1951, 241 S.W.2d 635. The question is: "Does the *refusal* of the trial court to grant the relief under the state of affairs here presented come within its discretion?" We believe that it does and that the trial court was not obliged to proceed when Blythe's success could not but create a condition entitling him to bring additional suits growing out of the controversy initially existing between himself and the city, and serving merely as a "springboard" from which suits for relief in law and in equity could be prosecuted thereafter against the city and his neighboring property owners. While it might be said that the declaratory judgment Blythe desires would terminate the controversy in so far as same extends to the validity or invalidity of what was done or attempted by the city, it would not terminate the controversy in so far as would be concerned any relief on account of acts already performed by the city, and neither would it terminate any phase of the controversy undoubtedly existing between Blythe and those who would be "proper" parties. It appears that all the authority from other jurisdictions is to the effect that when proper parties are absent, then it is an appropriate exercise of sound discretion to refuse declaratory relief. Anderson's Actions for Declaratory Judgment, 2d Ed., ch. 7, sec. 383, p. 932, and cases annotated under notes 42 and 43. See also Redick v. Peony Park, 1949, 151 Neb. 442, 37 N.W.2d 801.

 The general policy of this State aims at the avoidance of a multiplicity of suits except when to do so would produce confusion or delay or result in unnecessary costs. 1 Tex.Jur., p. 639, "Actions", sec. 33, "Avoidance of Multiplicity of Suits". The refusal of the trial court to proceed as Blythe requested until he had joined the additional property owners was obviously an attempt to enforce this general policy, and no good reason why its having done so would constitute an abuse of discretion under the circumstances was presented to either the trial court or this appellate court.

The judgment is affirmed.