NO. 07-03-0229-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 23, 2004

_____

APRIL SOUND MANAGEMENT CORP., APPELLANT

V.

CONCERNED PROPERTY OWNERS FOR APRIL SOUND, INC.,

A TEXAS NON-PROFIT CORPORATION AND DEVELOPER FOR

APRIL SOUND SUBDIVISION, APPELLEE

_____

FROM THE 221ST DISTRICT COURT OF MONTGOMERY COUNTY;

NO. 01-03-01815-CV; HONORABLE SUZANNE STOVALL, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**OPINION**

April Sound Management Corp. appeals from a judgment rendered on a traditional

motion for summary judgment declaring that Concerned Property Owners for April Sound,

Inc. (CPO, Inc.), as developer, may, pursuant to the deed restrictions applicable to the April Sound Subdivision at any time and from time to time, adjust, alter, waive, discontinue, or abandon all or any part of the maintenance charge, including without limitation, the recreational charge and the possible "additional" charge as set forth in the deed restrictions applicable to the various sections within the April Sound Subdivision. The judgment further declares that should CPO, Inc., as developer, discontinue or abandon the recreational charge, then there can be no basis for any "additional" charges to be added to the recreational charge. By its issues,[1] Management Corp. questions whether (1) the FDIC possessed any right of the original developer at the time the FDIC purportedly transferred developer's rights to CPO, Inc.; (2) CPO, Inc. has any right, as a matter of law, to possess or exercise rights reserved to the original developer as set forth within the deed restrictions, and, if so; (3) it has the right, in its sole discretion, to adjust, alter, waive, discontinue, or abandon all or any part of the maintenance charge set forth within the deed restrictions when it has never held nor owned any property or interest in the subdivision; (4) the trial court erred in refusing to abate the lawsuit until the lot owners in the subdivision and the April Sound Property Owners Association were properly joined in the lawsuit; (5) the trial court erred by granting declaratory relief when all persons who have or claim any interest that would be affected by the declaration were not made parties to the lawsuit as required by section 37.006 of the Texas Civil Practice and Remedies Code; (6) the trial court erred

_____

[1]Management Corp. does not present an issue contending the trial court erred in granting the motion for summary judgment as authorized by Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970).

2

by denying Management Corp.'s claims for declaratory relief; (7) the trial court erred by eliminating Management Corp.'s rights held by virtue of the deed restrictions; (8) CPO, Inc. established as a matter of law that there were no genuine issues of material fact precluding summary judgment on its declaratory relief claims; (9) CPO, Inc. established as a matter of law that there were no genuine issues of material fact that Management Corp. was not entitled to recover on its claims for declaratory relief; and (10) the trial court erred in denying Management Corp.'s motion for new trial. Based upon our analysis of issues four and five, we reverse and render in part, and reverse and remand in part.

The April Sound Subdivision[2] and the April Sound Country Club on Lake Conroe were developed together in 1972 by joint venture comprised of Southwest Savings Association as the original developer and other members to be part of a masterplanned community. Among other provisions and features to serve the 2200 lots, the recorded deed restrictions provided for the development's security, fire protection, streets, common areas, and recreational amenities including a clubhouse with dining room facilities, swimming pool, boat launching facilities, bridle trails, tennis courts, plus other facilities to be developed from time to time. Southwest Savings subsequently changed its name to United Savings Association of Texas, which was succeeded by the FDIC as manager of

---

[2]According to CPO, Inc.'s brief, the subdivision is composed of "at least 17 different sections," and by its original petition, CPO, Inc. alleged that each of the 17 sections was subject to separate deed restrictions. CPO, Inc. alleges the 17 sets of restrictions are identical "in pertinent part." However, the record presented here contains the reservations, restrictions, and covenants for section five only.

the resolution fund. CPO, Inc. contends that after all or substantially all of the lots were sold, pursuant to the provisions set forth in the deed restrictions, the FDIC transferred all of the duties and prerogatives of the developer to CPO, Inc.

The deed restrictions contain provisions creating a maintenance fund by imposing a maintenance charge to be assessed to each lot in the subdivision. As material here, per section 6.01, each lot is subject to an annual maintenance charge which, according to section 6.02, shall include amounts relating to recreational facilities payable monthly and in advance to April Sound Recreation Corporation. Also, section 6.05 provides in part:

> The maintenance charges collected shall be paid into the Maintenance Fund to be held and used for the benefit, directly or indirectly, of the subdivision; and such Maintenance Fund may be expended by the Developer for any purpose which, in the judgment of the Developer will tend to maintain the property values in the subdivision . . . and the decision of the Developer with respect thereto shall be final, so long as made in good faith.

According to section 6.08(a), the maintenance charge includes

> a sum to be determined by the Board of Trustees of April Sound Property Owners Association (such sum is hereinafter referred to as the "property charge"), and a sum to be determined by the Board of Trustees of April Sound County [sic] Club (such sum is hereinafter referred to as the "recreational charge"). The Recreational Corp. may add sum [sic] additional sum to the Maintenance Charge as in its judgment is necessary to carry out the objectives for which the Maintenance Charge is to be used and such additional sum shall be deemed to be part of the "recreational charge. . . ." The recreational charge shall be secured by the lien referred to in paragraph 8.06 hereof.

4

Then, in section 6.09, after recognizing the right of the "Board of Directors of the April Sound Recreation Corporation to determine and assess the exact amount of the Maintenance Charge and Recreational Charge," the amount of the initial monthly charge, including the recreational charge, is set at $12.00 per month. In summary, section 6 designates and provides:

- the "property" charge is to be determined by the Board of Trustees of April Sound Property Owners Association;
- the "recreational charge" is to be determined by the Board of Trustees of April Sound County [sic] Club (Recreation Corp.);
- the monthly maintenance charge is payable to April Sound Recreation Corp. and is secured by a lien per the covenants;
- the "exact amount of each maintenance charge" is to be determined by the Developer; and
- the Board of Directors of the April Sound Recreation Corporation has the "right" to "determine and assess the exact amount of the Maintenance Charge and Recreational Charge."

In the late 1970's Southwest Savings transferred its rights in the recreational facilities and the maintenance fund to April Sound Recreational Corporation. Subsequently, Management Corp. purchased the recreational facilities. In connection with the acquisition, Management Corp. commenced administering the operations of the April Sound Property Owners Association and the subdivision infrastructure.

Contending it had succeeded to the status and rights of the original developer by the transfer from the FDIC, CPO, Inc., instituted this suit against Management Corp. seeking declaratory relief that it has the right, power, and authority under the deed

5

restrictions to abandon the recreational charge component of the maintenance charge, including the "additional sum" for operations of the recreational facilities at April Sound. Among other things, CPO, Inc. alleged that Management Corp. breached numerous fiduciary duties to the property owners, wrongfully collected recreational charges in excess of $15,000,000, and property charges in the amount of $4,764,834. CPO, Inc. also alleged that at least $4,400,000 of trust funds were wrongfully used and converted by Management Corp. CPO, Inc. did not, however, seek to recover any damages against Management Corp. In addition to its general denial, by verified plea, Management Corp. asserted that CPO, Inc. was not entitled to recover in the capacity in which it sued and that there was a defect in parties because required persons or entities had not been made parties to the suit. Also, as material here, Management Corp. alleged that declaratory judgment should not be granted because all parties required for relief had not been joined and a judgment or decree would not terminate the uncertainty or controversy.

CPO, Inc. filed a traditional motion for summary judgment and without reciting the specific grounds therefor, generally alleged that as movant it had succeeded to the rights of the developer. The motion was supported by summary judgment evidence, authorities, and briefing. Tex. R. Civ. P. 166a(c). Referencing the applicable deed restrictions, CPO, Inc. sought a declaration that it had the right to discontinue all or any part of the maintenance charge and discretion to discontinue and forever eliminate the recreational and additional charges. Management Corp. filed its response to the motion together with its motion to abate the proceeding.

6

Contending CPO, Inc. had not joined all necessary parties and that there was another case pending, Management Corp. filed a second motion to abate. In this regard, Management Corp. alleged that elimination of the recreational charge would result in serious harm to each lot owner because each lot owner may be excluded from the club and the potential loss of the club would seriously and irreparably injure the property values within the subdivision. Citing sections 37.006(a) and 37.008 of the Texas Civil Practice and Remedies Code (Vernon 1997), Management Corp. sought abatement of the case which was denied by written order. The trial court also signed an order granting CPO, Inc.'s motion for summary judgment, which remained interlocutory because the motion did not address the counterclaim of Management Corp. CPO, Inc. then filed a motion for final summary judgment addressing the counterclaim. The trial court did not award CPO, Inc. damages nor attorney's fees, but declared that CPO, Inc., as developer, may, pursuant to the deed restrictions, at any time, and from time to time, adjust, alter, waive, discontinue, or abandon all or any part of the maintenance charge including without limitation, the recreational charge and the possible "additional charge." The judgment further declared that if CPO, Inc. discontinues or abandons the recreational charge, there can be no basis for any "additional" charges to be added to the recreational charge.

By its fourth issue, Management Corp. contends the trial court erred by refusing to abate the lawsuit until the lot owners in the subdivision and the April Sound Property Owners Association were properly joined in the lawsuit, and by its fifth issue, contends the trial court erred by granting declaratory relief when all persons who have or claim any

7

interest that would be affected by the declaration were not made parties to the lawsuit as required by section 37.006 of the Code. We agree and combine our analysis of the issues.

Abatement of an action is proper where it is apparent that all parties whose interest would be affected by the action have not been made parties. *See* Looney v. Sun Oil Co., 170 S.W.2d 297, 300 (Tex.Civ.App--Texarkana 1943, writ ref'd w.o.m.) (holding that the suit "in equity" should have been abated for want of necessary parties where it was apparent that the interests of two parties would be affected by the suit). Here, without joining the owners of the lots in the subdivision, CPO, Inc., sought and obtained an order declaring that pursuant to the deed restrictions it could, at any time and from time to time, adjust, alter, waive, discontinue, or abandon all or any part of the maintenance charge and recreational charge. Section 37.006(a) of the Code entitled Parties provides:

> (a) [w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration *must* be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding.

(Emphasis added). The purpose of this section is to avoid a multiplicity of suits because a declaratory judgment does not prejudice the rights of a person not a party to the proceeding. Blythe v. City of Graham, 303 S.W.2d 881, 883 (Tex.Civ.App.–Fort Worth 1957, no writ).[3]

---

[3]*See* Dahl v. Hartman, 14 S.W.3d 434, 436 (Tex.App.–Houston [14th Dist.] 2000, pet. denied). Dahl, a subdivision resident, filed a declaratory judgment action against the defendants, consisting of other residents who were seeking to renew deed restrictions and

8

"Must" creates or recognizes a condition precedent. Tex. Gov't Code Ann. § 311.016(3) (Vernon 1998); *see* Helena Chemical Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001). Accordingly, if the owners of the lots in the subdivision "would be affected" by the declaratory judgment sought and ordered, they "must" be joined as parties and, as in *Looney*, the suit should have been abated. 170 S.W.2d at 300. Because there is no litmus paper test to utilize in determining whether the lot owners should have been made parties, we will consider the declaration made by the trial court in the context of the deed restrictions and applicable property law.

"Property" is a word of comprehensive meaning and extends to every species of valuable right and interest in real and personal property. Womack v. Womack, 141 Tex. 299, 172 S.W.2d 307, 308 (Tex. 1943). Also, a property interest consists not merely in its ownership and possession, but includes the unrestricted right of use, enjoyment, and disposal. Mann v. Risinger, 423 S.W.2d 626, 632 (Tex.Civ.App.--Beaumont 1968, writ ref'd n.r.e.). The right to own and have exclusive dominion over private property is a sacred one, and it is a universal principle of law that the right to own property carries with it the right to control and dispose of it in such manner as not to contravene law or public policy. *See* Ford v. Grand United Order of Odd Fellows, 50 S.W.2d 856, 859

form a property owners association. The defendants filed a plea in abatement claiming that all 333 property owners were necessary parties who had not been served. The trial court agreed and ordered Dahl to serve all affected property owners. When Dahl failed to comply with the trial court's order, the case was dismissed. On appeal, the court held the trial court did not abuse its discretion in dismissing Dahl's action. *Id*. at 437.

9

(Tex.Civ.App.--Beaumont 1932, writ dism'd w.o.j.). The rules governing the amenities and recreational facilities associated with the use and enjoyment of real estate should be definite and certain so as to lend stability and predictability of land titles. In a concurring opinion in Reed v. Wylie, 597 S.W.2d 743, 751 ( Tex. 1980), Justice Spears wrote:

> It is axiomatic that rules of property are not to be tampered with lightly or easily changed. Persons rely on rules of property in the conduct of their affairs and are entitled to depend on the stability of those rules without periodic alterations occasioned by the changing winds of the day.

Although Justice Spears was concerned with the question of whether lignite at the surface was a mineral or part of the surface, his remarks concerning reliance on the controlling rules or regulations and the need for predictability and stability also apply to the deed restrictions.

A detailed analysis of the deed restrictions is not required but in summary they include provisions for architectural controls of buildings and structures, designation of lots as either "Lakefront Lots" or "Town and Country Lots," and include general restrictions on use, *i.e.*, residential use, set back lines, and the like. Also, section V contains special restrictions applicable to lakefront lots regarding piers, boat slips, walls, planters, and other improvements. In addition, the maintenance, recreational, and property charges applied to recreational features such as the clubhouse, swimming pool, boat launching facilities, bridle trails, tennis courts, and other common areas, and were payable monthly and secured by a lien on the lots.

Additionally, section VI includes detailed provisions for the determination of the amount of the various charges. It allocates the authority to make certain determinations and administrative decisions to the Board of Trustees of the April Sound Property Owners Association, the Board of Trustees of April Sound Country Club, the April Sound Recreational Corp., and the developer. It is significant to note that section 6.05 authorizes the expenditure of funds in such a manner as "will tend to maintain the property values in the subdivision," which involves the exercise of judgment and could have a significant impact on property values of lots in the subdivision in the future. Construing the deed restrictions in light of the intent of the plan for development of the subdivision, the recreational opportunities presented by the development were designed to provide the owners with significant rights, benefits, and recreational opportunities incidental to ownership of property in the development. *See* Parker v. Delcoure, 455 S.W.2d 339, 343 (Tex.Civ.App.--Fort Worth 1970, writ ref'd n.r.e.); *see also* Brite v. Gray, 377 S.W.2d 223, 225 (Tex.Civ.App.--Beaumont 1964, no writ),

The general rule that some of the owners of property in a subdivision may not release or modify applicable restrictions without the concurrence of others who own property in the subdivision is grounded upon the vesting of rights and privileges in lots in common with other lot owners in the subdivision. *See* Smith v. Williams, 422 S.W.2d 168, 172 (Tex. 1967). In Letsos v. Katz, suit was brought against the subdivision committee but the court held that the individual lot owners had a joint interest with the committee and

11

were indispensable parties to the action. 489 S.W.2d 317, 319 (Tex.Civ.App.--Houston [1st Dist.] 1972, no writ).

This action for declaratory judgment is not a suit against a lot owner to enforce compliance with one or more lot restrictions which would not implicate rights of other lot owners. Instead, it is an action for a declaration that the developer has the power to adjust, alter, waive, discontinue, or abandon all or any part of the recreational charge notwithstanding the provision in section 6.08(a) of the deed restrictions that the recreational charge is to be determined by the Board of Trustees of April Sound Country Club (Recreational Corp.). Moreover, the payment of the charges, including the recreational charge, is secured by a lien on the property.

The declaratory relief sought by CPO, Inc. implicates significant incidental rights of the owners of lots in the subdivision, and in that context, presents a situation similar to the issues presented in Simpson v. Afton Oaks Civic Club, Inc., 117 S.W.3d 480, 483 (Tex. App.--Texarkana 2003, pet. filed Nov. 6, 2003).[4] Simpson sought a declaratory judgment to nullify the mandatory property owners' association. Concluding the declaratory relief that Simpson sought would, in effect, change the rights and interests of each property owner in the association, the court held that all property owners were necessary parties to

[4]In *Simpson*, the question of joinder of parties was not raised by plea in abatement in the trial court but rather was raised as fundamental error for the first time on appeal. The opinion in *Simpson* had not been released when the trial court signed the order on February 12, 2003.

the suit and their absence divested the trial court of subject matter jurisdiction which could be raised for the first time on appeal. *Id*. at 484.

Moreover, the underlying case may present one of those rare situations which requires the presence of indispensable parties to the controversy whose absence deprives the court of jurisdiction. *See* Travis Heights Imp. Ass'n v. Small, 662 S.W.2d 406, 413 (Tex.App.–Austin 1983, no writ); *see also* Nuchia v. Woodruff, 956 S.W.2d 612, 617 (Tex.App.--Houston [14th Dist.] 1997, pet. denied). Thus, considering that property rights are fundamental and the benefits that would be achieved by stabilizing uncertainty regarding deed restrictions, and because the interests of non-party lot owners would be affected by the declaration, we hold the trial court erred in not granting Management Corp.'s plea in abatement as required by section 37.006(a) of the Texas Civil Practice and Remedies Code. Issues four and five are sustained. Our disposition of issues four and five pretermits consideration of the remaining issues.

Accordingly, the judgment of the trial court signed February 12, 2003, and the order denying the second motion to abate of Management Corp. signed April 25, 2002, are reversed; rendering the judgment the trial court should have rendered, the plea in abatement of Management Corp. is granted. *See* Tex. R. App. P. 43.2 (c). Otherwise, the cause is remanded to the trial court for further proceedings.

Don H. Reavis
Justice

13