**Opinion issued October 10, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00610-CV

———————————

**ARRABY PROPERTIES, LLC, Appellant**

**V.**

**PAUL BROWN, Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-82986**

---

## DISSENTING OPINION

This case is about the rights and duties that come with property ownership.

"The right to acquire a known property and to deal with it and use it as the owner

chooses, so long as the use harms nobody, is a natural right." *Spann v. City of Dallas*,

235 S.W. 513, 515 (Tex. 1921). A property owner's duty to harm no one else through

the use of his property creates, for example, a duty to invitees on his property to make safe or warn of dangerous conditions on the property. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). That duty runs with the ownership or control of the property. *Id.* A property owner can thus be liable when a guest enters the property and is harmed by the dangerous condition on the property. *See id.* But who is liable when the dangerous condition on a person's property wanders off the property and harms another?

The legislature has determined that, when the dangerous condition is livestock, the owner or other person responsible for the livestock is liable. The owners of and those responsible for livestock have a statutory duty to not knowingly permit the livestock to roam on a highway. *See* Tex. Agric. Code § 143.102. But when there is a complete absence of evidence establishing an owner or other person responsible for a livestock animal, I believe the owner of the property who knowingly allows the animal to stay on the property is liable.

In this case, Arraby Properties, LLC, allowed a cow to be kept on its property. Arraby provided no more than a scintilla of evidence that it relinquished control of the property, including the cow kept there, or that any other person was responsible for the cow. In the absence of such evidence, I believe Arraby, as the property owner, is responsible for the control of the cow. This responsibility includes a duty to maintain sufficient fencing on the property to not permit the cow to roam unattended

2

on the highway, as the cow in this case did, where Paul Brown eventually collided with it.

Paul Brown was a well-respected maritime pilot driving to work early one morning when the accident occurred. He was a pioneer in his industry as one of the first Black cargo pilots in the United States. His coworkers described him as smart, likeable, and a mentor to everyone around him. Brown loved his job and planned to continue working until mandatory retirement. But all of that changed when he collided with the cow from the Arraby property. He suffered a traumatic brain injury, and his personality changed. He became depressed and had difficulty concentrating, sleeping, and thinking. He could no longer work in the job he loved because it required a high level of both physical and cognitive performance, and he had to take an early retirement. Because the majority refuses to hold Arraby, the property owner that permitted the cow to roam off its property and cause this collision, responsible, I respectfully dissent.

*Fences, Range Restrictions, and Running at Large on Highways*

Though Texas was a free-range state at common law, the legislature has imposed a duty to restrain livestock from roaming on highways by keeping the animals confined within fences. *See Pruski v. Garcia*, 594 S.W.3d 322, 323 (Tex. 2020); *Gibbs v. Jackson*, 990 S.W.2d 745, 747–48 (Tex. 1999); *see also Billelo v. SLC McKinney Partners, L.P.*, 336 S.W.3d 852, 854 (Tex. App.—Dallas 2011, no

3

pet.) (explaining the duty to confine animals within fences is "purely statutory in nature"). Under Section 143.102 of the Agriculture Code, a "person who owns or has responsibility for the control of" certain livestock, including cows, "may not knowingly permit the animal to traverse or roam at large, unattended, on the right-of-way of a highway." TEX. AGRIC. CODE § 143.102. The law imposes a small criminal penalty for violations, *see id.* § 143.108 (imposing Class C misdemeanor for violation of Section 143.102), but Texas courts have relied on this statute to also create a standard of care for civil liability purposes for owners and other persons responsible for livestock when their animals stray onto highways. *Pruski*, 594 S.W.3d at 325–26. Therefore, a person who is injured by a livestock animal roaming on a highway, as Brown was here, may recover under a negligence theory against the (1) "person[1] who owns or has responsibility for the control of" certain livestock animals, who (2) "knowingly permit[s] the animal to traverse or roam at large, unattended, on the right-of-way of a highway." TEX. AGRIC. CODE § 143.102; *Pruski*, 594 S.W.3d at 325–26.

In this case, as the trial court concluded, the evidence shows that Arraby is the person who has responsibility for the control of the cow because it permitted the cow to stay on its property and did not relinquish control to anyone else, and the evidence

---

[1]    In a statute, "person" includes a corporation. TEX. GOV'T CODE § 311.005(2).

shows Arraby knowingly permitted the cow to roam at large by making no effort to keep the cow properly fenced in.

*Responsibility for the Control of the Cow*

Property ownership comes with a "bundle of rights" and duties, among which are the right to exclusive control, possession, use, and enjoyment of the property and the duty to refrain from using the property in a way that harms others. *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 383 (Tex. 2012); *Ford v. Grand United Ord. of Odd Fellows of State of Tex.*, 50 S.W.2d 856, 859–60 (Tex. App.—Beaumont 1932, writ dism'd w.o.j.); *see also Spann*, 235 S.W. at 515.[2] But a property owner's duty to others is limited if the property owner relinquishes some or all of his possession and control of the property. *See Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008). The property owner's duty is commensurate with the right of control over the property. *See Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993).

In this case, Arraby undisputedly owns the property on which Eugene and Mary Alice Ybarra lived and on which they kept a cow. Victor Ybarra, testifying on

---

[2] "The right to own and have exclusive dominion over private property is a sacred one, and it is a universal principle of law that the right to own property carries with it the right to control and dispose of same in such manner as not to contravene the statute law or public policy." *Ford*, 50 S.W.2d at 859–60.

"Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal." *Spann*, 235 S.W. at 514.

behalf of Arraby as its president and managing member, knew his parents kept a cow on the property. There is no evidence, aside from Victor's testimony that the trial court found uncredible, that Arraby relinquished control of the property. Victor claimed his parents lived there and took care of everything and said Arraby was owner in name only, but he provided no specific evidence to support this claim. There is, however, at least some evidence that Arraby did not relinquish control of the property:

- Arraby owned the property where the cow was kept;

- Eugene's health was declining, and he had to use a walker;

- Mary Alice was diagnosed with Alzheimer's disease; and

- It was apparent to their children that Eugene and Mary Alice were not capable of taking care of a cow or a ranch.

Though Eugene and Mary Alice lived on the property, the evidence suggests they were not physically capable of controlling or managing the property. Thus, there was sufficient evidence to support the trial court's finding that Arraby was responsible for the control of the property, including the cow kept on it.

There was no specific evidence of who cared for the cow on the property or maintained the fences that kept the cow on the property. Victor explained that Eugene, before his death, worked at the restaurant he owned every day and that Eugene "had people that worked under him [that] he would send to . . . his house. If [he] needed a light bulb changed, they'd change it. If [he] had something wrong with

6

the fence, they'd fix the fence." When asked specifically about maintaining the fences, Victor said, "My father's workers were the ones who took care of it." But he did not name a single person, testify that he had ever seen or interacted with any of these people whom he allowed onto the property he owned, provide any evidence that Eugene or Arraby made arrangements to care for the cow or ever paid these workers for the work they did, or provide any evidence that anyone at any time had ever repaired the fence. His testimony amounts to no more than a scintilla of evidence that anyone else was responsible for the cow or maintaining the fences around it.

And the trial court found Victor's testimony uncredible. Generally, the testimony of an interested witness, even if not contradicted, does no more than raise a fact issue, and whether to credit that testimony is a question for the factfinder. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam). Here, the factfinder evidently did not believe Victor's testimony that unidentified and seemingly unpaid workers were coming on to the property to inspect and repair the fences. The majority claims the trial court was not entitled to disbelieve Victor's testimony because a trial court cannot "ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *See City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005). Yet Victor's unspecific, conclusory

7

testimony is anything but clear, positive, direct, otherwise credible, or readily controverted. An assertion that unspecified people perform work unseen and unpaid is not clear, positive, or direct. The testimony was not otherwise credible because the trial court specifically found in its findings of fact and conclusions of law: "The testimony of Victor Ybarra, for the most part, was not credible." And there was no way to contradict his claim that unseen, unidentified people who were seemingly never paid were coming to the property on a regular basis to care for the cow and repair the fence around it. The trial court, then, was not required to believe this testimony.

On appeal, Arraby relies on *Levesque v. Wilkens*, 57 S.W.3d 499 (Tex. App.—Houston [14th Dist.] 2001, no pet.), and the existence of a landlord–tenant relationship to show that it relinquished control of the property. *See id.* at 505 (explaining when property owner leases property to tenant and gives him exclusive right to occupy property, Section 143.102 places duty to restrain livestock on owner of livestock, not property owner). But Arraby's reliance on *Levesque* is misplaced because the trial court did not find a landlord–tenant relationship, and whether one exists is a question of fact. *City of Irving v. Seppy*, 301 S.W.3d 435, 445 n.2 (Tex. App.—Dallas 2009, no pet.); *see also Brown v. Johnson*, 12 S.W.2d 543, 545 (Tex. [Comm'n Op.] 1929). Here, there was no evidence of a lease, any other kind of rental agreement, rental payments, or anything else that would suggest a landlord–tenant

relationship between Arraby and Eugene and Mary Alice. The trial court correctly refused to find a landlord–tenant relationship. And without a lease transferring control of the property, there is no evidence that Arraby relinquished its control of the property, including the livestock and fences on it. The majority is correct that no authority requires proof of a formal landlord–tenant relationship or a formal lease agreement to determine responsibility for the control of a livestock animal. But such proof would conclusively establish the property owner had relinquished control, and that conclusive proof is missing here. *See Levesque*, 57 S.W.3d at 505 ("Because the lease agreement gives [the tenant] the exclusive right to occupy the land from which the bull escaped, it follows that [the tenant] had exclusive possession and control of the land, the fence, and the bull."). In the absence of conclusive proof, responsibility for the control of the animal was an issue for the factfinder to decide, and the factfinder here decided Arraby, as the property owner, had responsibility for control of the cow.

Moreover, even if there were some sort of landlord–tenant relationship here, a landlord can be held liable when he retains control over the leased premises. *See Tidwell*, 867 S.W.2d at 21; *see also Harlow v. Hayes*, No. 07-95-0210-CV, 1996 WL 467464, at *3 (Tex. App.—Amarillo Aug. 16, 1996, no writ) (per curiam) (not designated for publication) ("[A] landlord can be held liable when circumstances

9

indicate a retention of control over the premises."). As discussed above, the circumstances in this case indicate that Arraby retained control of the property.

Bob Kingsbery, the expert on the cattle industry and particularly livestock fencing who testified at trial, succinctly summarized Arraby's responsibility for the cow: "[Arraby] owned the property. They knew there was a cow there. They knew that their parents were not capable of properly maintaining the cow, inspecting the fence." He testified, "[S]omebody has to be responsible for the cattle. And if the property owner knows the cattle are there, and absent somebody else being responsible for the cattle, then, yeah. I'd say the property owner would be responsible." In this case, the property owner is Arraby.

I agree with the trial court—Arraby was responsible for the control of the property and the cow. Arraby owned the property and knowingly allowed the cow to be kept there, and there was no more than a scintilla of evidence to support Victor's claim that Arraby relinquished control of the property or of the cow knowingly kept on it. Because Arraby knowingly allowed the cow to be kept on its property and did not relinquish control or identify any other person responsible for the control of the cow, Arraby, as the property owner, was responsible for the control of the cow.

*Knowingly Permit the Animal to Traverse or Roam on a Highway*

A person with responsibility for the control of a livestock animal is only liable under Section 143.102 of the Agriculture Code if that person "knowingly permit[s] the animal to traverse or roam at large, unattended, on the right-of-way of a highway." TEX. AGRIC. CODE § 143.102. Here, Arraby knowingly permitted the cow to roam at large because it made no effort to keep the cow fenced in.

The duty established by Section 143.102 of the Agriculture Code to not knowingly permit livestock animals to roam at large encompasses the corollary duty to properly fence those animals in. *See Pruski*, 594 S.W.3d at 324 (acknowledging owner's statutory liability for failure to fence livestock); *see also Billelo*, 336 S.W.3d at 854 (explaining Section 143.102 creates duty to confine animals within fences); *Ceniceros v. Pletcher*, No. 07-15-00427-CV, 2017 WL 2829325, at *6 (Tex. App.— Amarillo June 29, 2017, pet. denied) (mem. op.) (explaining duty arising under stock law also creates "statutory duty" to "non-negligently maintain suitable fencing"); *Van Horne v. Harris*, No. 2-06-183-CV, 2007 WL 865801, at *3 (Tex. App.—Fort Worth Mar. 22, 2007, no pet.) (mem. op.) (explaining "duty to not permit the livestock to run at large encompasse[s] maintenance of the property's fences and gates").

The law does not impose liability for accidental escapes. *See Beck v. Sheppard*, 566 S.W.2d 569, 572 (Tex. 1978) (holding animal's mere presence on

highway does not create presumption of negligence). A person responsible for the control of a cow is only liable under Section 143.102 if that person permits the animal to roam or fails to fence in the animal with a "knowing" mental state. *See Pruski*, 594 S.W.3d at 330 (concluding Section 143.102's "knowing" standard for liability prevails when Section 143.102 and local stock law apply).

The Agriculture Code does not define "knowing," but because the statute is penal in nature, the Supreme Court has used the Penal Code definition of the "knowing" culpable mental state to interpret Section 143.102. *Id.* at 326–27 (explaining livestock owner violates Section 143.102 by permitting animal to roam at large on a highway "with the knowing mental state traditionally applied in criminal law"). The Penal Code provides:

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE § 6.03(b).

Here, circumstantial evidence allows the finding that Arraby knowingly permitted the cow to roam at large on a highway because Arraby, with awareness of the consequences, did not keep the cow fenced in. Arraby willingly did not fulfill its duty, as owner of the property where the cow was kept, to inspect or maintain the

fences controlling the cow or make arrangements for their inspection and maintenance.

The expert testimony of Bob Kingsbery, the cattle industry and fencing expert, established that if fences around livestock are not properly inspected and maintained, these fences can break down in as little as a week. Kingsbery testified that whenever a cow is kept in a fenced property or pasture, "the fence needs to be checked, inspected, and maintained on a regular basis." That means "more than once a week," someone should "inspect the entire length of the fence." Based on their children's descriptions of their infirmities, Kingsbery concluded Eugene and Mary Alice were not capable of inspecting and maintain the fences themselves, nor were they capable of performing any needed repairs on the fence.

Victor testified that Arraby, as property owner, also owned the fence on the property. But Victor, the president and managing partner of Arraby, admitted he had no familiarity with livestock, no familiarity with what was required to maintain a fence around a livestock pasture, and no records for maintaining the fences on the property. Victor plainly admitted he does not fix fences. Victor also testified that he knew the purpose of the fence around the pasture was to keep the cow in the pasture and that the cow could escape through a broken part of the fence. Victor's testimony shows he knew the cow on the property could escape, yet Arraby did nothing to

13

ensure the cow was properly fenced in. Arraby left that responsibility to Victor's elderly, physically and mentally infirm parents.

Victor testified that his father's workers would come onto the property to take care of the cow and maintain the fences around it. But again, Victor did not name a single person, testify that he had ever seen or interacted with any of these people whom he allowed onto the property he owned, provide any evidence that Eugene or Arraby made arrangements to care for the cow or ever paid these workers for the work they did, or provide any evidence that anyone at any time had ever repaired the fence. His testimony amounts to no more than a scintilla of evidence that the fences were maintained.

Where there is no evidence, aside from uncredible and unsupported interested testimony, of the fences ever being maintained, there is expert testimony that fences around livestock can fall into disrepair in as little as a week, and there is undisputed evidence that the cow actually did escape from the property, then this circumstantial evidence permits the inference that the cow escaped through a broken fence. Unlike other livestock animals like horses, cows cannot simply jump over fences. Thus, a cow can only escape a fenced area through a broken fence, so if the cow on the Arraby property escaped, it must have been through a broken fence.

A person acts knowingly with regard to circumstances surrounding his conduct when he is aware that the circumstances exist. TEX. PENAL CODE § 6.03(b);

14

*see also Pruski*, 594 S.W.3d at 326–27 (applying "knowing mental state" in criminal law to Section 143.102 civil liability). Here, Victor, as president and managing member of Arraby, was aware that there was a cow on Arraby's property, that the cow could escape through a broken fence, and that Arraby made no arrangements to inspect and maintain the fence to make sure the fence was not broken. Thus, Arraby knowingly permitted the cow to roam at large by not ensuring the animal was fenced in, and it did nothing to prevent the cow from roaming onto a highway.

The law imposes no liability for the accidental and temporary escape of an animal through no fault of its owner or keeper. *Pruski*, 594 S.W.3d at 327 (explaining that permitting animal to roam at large means more than temporary escape); *Beck*, 566 S.W.2d at 572 (holding animal's mere presence on highway does not create presumption of negligence on part of property owner or animal's owner). But I believe that fault is shown here with Arraby's conscious indifference to its responsibility to keep the cow on its property properly fenced in. Section 143.102 imposes liability for permitting an animal to roam at large on a highway, and to permit to roam means to allow an animal "to graze and move about freely in an unconfined area." *Pruski*, 594 S.W.3d at 327. Arraby made no effort to confine the cow on its property. In that way, Arraby knowingly permitted the cow to roam at large, and the cow wandered onto a highway where Brown collided with it, resulting in serious injury. Therefore, Arraby is liable to Brown for the damage it caused.

The evidence in this case shows that Arraby, as property owner, was responsible for the control of the cow on its property because it knowingly allowed the cow to be kept there and did not relinquish that control to anyone else, and the evidence shows Arraby knowingly permitted the cow to roam at large on a highway because Arraby made no effort to keep the cow fenced in. Arraby had a duty to confine the cow by inspecting and maintaining the fences around the cow but did not do so and did not make arrangements for their inspection and maintenance. Thus, Arraby is liable under Section 143.102 of the Agriculture Code, and the trial court correctly found Arraby was negligent in knowingly permitting the cow to roam at large on a highway and correctly awarded damages to Brown. Thus, I would affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Farris.

Goodman, J., dissenting.