## LOONEY v. SUN OIL CO.
### No. 5964.

Court of Civil Appeals of Texas. Texarkana.
Feb. 18, 1943.

Rehearing Denied March 25, 1943.

298

S. L. Lewis and Burford, Ryburn, Hincks & Charlton, all of Dallas, for appellant.

Angus G. Wynne, of Longview, and T. L. Foster, J. W. Timmins, and Martin A. Row, all of Dallas, for appellee.

WILLIAMS, Justice.

This suit between appellee, Sun Oil Company, plaintiff below, and appellant, T. P. Looney, defendant below, is grounded upon a quitclaim deed and contract executed and duly acknowledged by both plaintiff and one W. F. Nenney. It is dated May 14, 1936, and was timely recorded in Gregg County Deed Records. The material parts of above instrument necessary to an understanding of the points to be discussed read:

"Whereas, on the 6th day of June 1935, Manuel Strong and wife, Minnie Lee Strong, and John W. Scott, as lessors, executed and delivered to W. F. Neeney, as lessee, an oil, gas and mineral lease covering seven acres, more or less, out of the John Blair Survey in Gregg County, Texas, * * * and more particularly described as follows: Beginning at the SW corner of the Sun Oil Company lease as reflected by a certain plat attached to and filed with a certain ratification agreement between Manuel Strong and wife to Sun Oil Company, dated December 15, 1932, and filed for record, which is designated on said map and plat as No. 1; * * *." (Here follows description by metes and bounds of a tract called seven acres, more or less.)

"Said lease being recorded under file No. 6455, Records of Gregg County, Texas; and Whereas, on the 20th day of June 1935, the Federal Royalties Company, Inc., as lessor, executed and delivered to W. F. Nenney, as lessee, an oil, gas and mineral lease covering the above described seven acres, more or less, said lease being recorded in Vol. 187, page 420, Deed Records, Gregg County, Texas; and

"Whereas, Sun Oil Company is the owner of an oil, gas and mineral lease executed by Manuel Strong and Minnie Lee Strong covering 50 1/2 acres, more or less, out of the John Blair Survey, Gregg County, Texas, and a controversy has existed as to whether the lease owned by Sun Oil Company covers and includes the seven acres, more or less, specifically described above;

"Now, Therefore, in consideration of the mutual benefits to accrue herefrom, this agreement by and between Sun Oil Company and W. F. Nenney.

"Witnesseth:

"I. Sun Oil Company does hereby release and quitclaim unto the said W. F. Nenney all of its right, title and interest in and to the seven acres, more or less, specifically described above.

"II. W. F. Nenney does hereby agree and bind himself, his heirs and assigns, that not more than one well for oil and gas will be drilled on said seven acres, regardless of the number of wells which may be drilled on the lands adjoining said seven acres, and he further agrees that the drilling of one well on said seven acres will be adequate development of said seven acres. This agreement on the part of said W. F. Nenney shall be covenant running with the land and shall be binding upon W. F. Nenney, his heirs and assigns."

By virtue of an assignment executed by Nenney and dated August 4, 1939, defendant acquired and now owns the leasehold estate covering the 7 acre tract. The leasehold estate so assigned is recited to be all rights, titles and interests of Nenney acquired by him under above-mentioned leases executed by Strong and Federal Royalties Company. The latter will hereafter be referred to as Federal. Nenney had drilled in producing well No. 1 prior to his assignment of the leasehold. Thereafter, in late December 1939, the defendant began drilling operations, and early in January 1940, had completed wells Nos. 2 and 3. In December 1940, defendant completed well No. 4. The four wells are now and have been producing oil from the 7 acre tract from the date each was drilled in.

In the first amended original petition, filed June 16, 1941, upon which trial was had, plaintiff pleaded the execution of the

agreement above set out and the acquisition of the 7 acre leasehold estate by defendant with notice of the provisions stipulated in said agreement. Plaintiff alleged that contrary to the provisions in said agreement, defendant had drilled the additional producing wells Nos. 2, 3 and 4, and was continuing to produce oil therefrom. Plaintiff alleged that at the time of the execution of the agreement it was, and now is, the owner of an adjoining leasehold estate and producing oil therefrom, and that "defendant's violation of the covenants of the agreement will greatly lessen the value of plaintiff's property, and, unless restrained, will result in irreparable loss and damage which damages are not susceptible of exact computation and for which it has no adequate remedy at law." Plaintiff prayed for judgment, requiring defendant to specifically perform all the covenants set out in the agreement that had been executed by Nenney, and that defendant be restrained and enjoined "from drilling for oil or gas and from producing oil and gas from any well on the 7-acre tract, other than the first well. * * *"

The defense urged, which consisted mainly of pleas in abatement, pleas to the jurisdiction, general demurrer and special exceptions, all of which were overruled by the court, will appear later herein. A trial to the court resulted in a judgment which decreed that Looney "do specifically perform each and all of the covenants and agreements" made on the part of Nenney; that defendant be and is "further permanently restrained and enjoined from drilling for oil or gas and from producing oil or gas from any well on the 7-acre tract other than well No. 1; * * * from doing any act tending to drill or to produce oil or gas at any place on the 7-acre tract other than well No. 1"; and "that plaintiff shall be entitled to such writ or writs of injunction as may be necessary to enforce this decree."

Defendant's application for permits to drill wells Nos. 2 and 3, filed on November 7, 1939, was granted by the Railroad Commission of Texas on December 8, 1939, and likewise his application to drill well No. 4, filed November 19, 1940, was granted December 3, 1940. The permits were granted, as recited in the order, "under exception to provision of rule 37, * * * to prevent confiscation and waste." Plaintiff and other adjacent leasehold operators contested the granting of above permits.

Plaintiff is a party appealing from the order of the Railroad Commission granting permits to drill wells Nos. 2 and 3 in suit No. 62834, filed January 29, 1940, and which is still pending in the 126th District Court of Travis County. Plaintiff is also a party appealing from the order granting permit to drill No. 4 in cause No. 64259, filed January 18, 1941, and which is still pending in the 98th District Court of Travis County. The quitclaim deed and agreement set up in plaintiff's first amended original petition were urged before the Railroad Commission by plaintiff in its contest of defendant's application for permit to drill wells Nos. 2, 3 and 4; and the same instrument is pleaded in the suits now pending in the District Courts of Travis County to vacate and annul the permits.

On January 6, 1940, which was after defendant had been granted permits to drill wells Nos. 2 and 3, and prior to the time he was granted permit to drill No. 4, plaintiff filed its original petition in the instant suit, in which plaintiff prayed for a temporary restraining order to enjoin defendant from drilling for oil or producing oil from any well on the 7 acres other than well No. 1. Defendant was served with citation on January 6, 1940.

Under Point 1, grounded upon his pleas in abatement, defendant asserts that the District Court of Gregg County was without jurisdiction because there were pending in the district courts of Travis County causes involving the same questions of law and of title as against defendant and because Article 6049c, Sec. 8, Vernon's Ann. Civ.St. of Texas, conferred exclusive jurisdiction upon the district courts of Travis County to adjudicate the matters involved in this litigation.

■ It is without controversy that in the two "Rule 37" suits which were pending in the district courts of Travis County at the time of the instant trial and which are still pending, that plaintiff "has followed the statutory procedure to attack the validity of the permits" to drill wells Nos. 2, 3 and 4. We are in accord with defendant's contention, not disputed by plaintiff, that in actions to set aside or annul the orders of the Railroad Commission of Texas, exclusive jurisdiction is vested in the district courts of Travis County by virtue of Article 6049c, Sec. 8, Vernon's Ann.Civ.St. of Texas. Alpha Petroleum Co. v. Terrell, 122 Tex. 257, 59 S.W.2d 364, 372;

Gulf Land Co. v. Atlantic Refg. Co., 134 Tex. 59, 131 S.W.2d 73.

But it is to be observed from an examination of the pleadings and prayer for relief in the instant suit that plaintiff sues for specific performance of an alleged contract; to adjudicate and enforce an alleged contractual right. We know of no statutory provision and are cited to none which vests exclusive jurisdiction in a dis-, trict court of Travis County to adjudicate such character of action as presented in the instant suit. The fact that the relief here sought, if sustained, may have the effect, indirectly, of destroying the value of defendant's permit to operate wells Nos. 2, 3 and 4, will not deprive the District Court of Gregg County of jurisdiction to hear and adjudicate this issue of the enforcement of the alleged contractual rights. Tidewater Oil Co. v. R. R. Comm., Tex. Civ.App., 76 S.W.2d 553; Bennett v. Sun Oil Co., 126 Tex. 269, 84 S.W.2d 693; Railroad Comm. v. Rau, Tex.Civ.App., 45 S.W. 2d 413. If potential jurisdiction, as mentioned in Ex parte Lee, 127 Tex. 256, 93 S.W.2d 720, 723, rested in the District Court of Travis County to hear and adjudicate this issue of specific performance, such fact would not abate the instant suit, the latter having been filed prior in point of time in the District Court of the county of defendant's residence and the county where the land is situated. 1 T.J. p. 101; Hope v. Alley, 11 Tex. 259; Tidewater Oil v. R. R. Comm., supra.

Point 2 complains of the court's action in overruling defendant's plea in abatement and his special exception wherein it was specifically pointed out that Manuel Strong and wife, Federal Royalties Company, Inc., Abe Pounds, Trustee, and Jewel Kimberlin were necessary and proper parties and were not before the court.

In a proceeding in equity, and this is a suit in equity, 38 T.J. p. 641, Sec. 2, "It is necessary to join as parties all persons whose interests are directly or indirectly involved by the controversy." 17 T.J. p. 34, Sec. 32. The oil and gas lease dated June 6, 1935, mentioned in the quitclaim deed and agreement, executed by Strong and wife to Nenney, lessee, recites a royalty of 1/8 of the oil produced and a $4,000 bonus to be paid out of 1/8 of the 7/8 leasehold oil. The oil and gas lease dated June 20, 1935, mentioned in the agreement hereinabove set out, executed by the Federal to Nenney as lessee, recites a royalty of 1/8 of the oil produced. The former lease was filed for record June 7, 1935, the latter on August 20, 1935. An instrument dated June 6, 1935, filed for record June 1, 1936, which Strong and wife are alleged to have executed, purports to be an agreement by them with Nenney that the latter, his heirs or assigns, will not be required to drill more than one well on the 7 acres under any circumstances, and that one well would constitute full and complete development of the 7-acre lease. Another instrument of like import alleged to have been executed by Federal is dated June 20, 1935, and was filed for record June 1, 1936. The description of the 7 acres in each of the last-named four instruments is the same as set forth in the quitclaim deed and agreement. It is without controversy that by virtue of the oil and gas leases executed by Strong and Federal, they each owned at all times here involved an interest in the royalty, and was paid for such interest in the royalty out of each well as it was completed, and at time of trial was receiving such payments. It is without dispute that the Strongs and Federal have each received and were receiving at the time of trial an interest out of the 1/8 royalty from each well. Under the judgment entered, the Strong and Federal each will receive a royalty interest out of 1/8 of the production from one well instead of four wells, a decrease of 3/4. And further, the decree entered in effect limits or restricts the provisions of the two oil and gas leases executed by Strongs and Federal. That the interests of Strongs and Federal will be affected by this suit and the decree entered is apparent. The suit should have been abated for want of necessary parties. Pomeroy's Equity Jur., 5th Ed., Sec. 114; Bays v. Wright, Tex. Civ.App., 132 S.W.2d 144; Parker v. Casey, Tex.Civ.App., 29 S.W.2d 426; Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472; Sharpe v. Landowners Corp., 127 Tex. 147, 92 S.W.2d 435; Pure Oil Co. v. Reece, 124 Tex. 476, 78 S.W.2d 932; Allison v. Shilling, 27 Tex. 450, 86 Am.Dec. 622.

It is urged that Strongs and Federal having both agreed to a limitation of one well on the tract prior to the execution of the Sun-Nenney agreement, they now have no interest or right of action in the present controversy regardless of the present suit, and therefore were not necessary parties. Strongs and Federal not being parties to this suit, they are not bound by

the judgment. For the reason, see Bays v. Wright, supra; Juan Garzot v. Rios De Rubio, 209 U.S. 283, 28 S.Ct. 548, 52 Ld. Ed. pp. 794, 800, 801; 30 Am.Jur. (Judgments) Secs. 220, 221. A discussion of the plea in abatement with respect to Abe Pounds, trustee, and Kimberlin is pretermitted as the record does not disclose when or from whom they acquired their interests, if any.

 It is to be observed that the agreement states that Nenney, defendant's assignor, holds two leases covering the 7 acres, and plaintiff holds a lease covering 50½ acres, and that "a controversy has existed as to whether the lease owned by Sun Oil Company covers and includes the seven acres." The instrument then recites, "In consideration of the mutual benefits to accrue therefrom" Sun Oil Company releases and quitclaims all its right, title and interest in the 7 acres and Nenney restricts the development of the tract to one well. This record is silent as to the merits of the alleged controversy recited then to exist. It is not asserted that such recital of a controversy then existing was inserted or obtained through fraud or mutual mistake. Under such record we are unable to reach the conclusion that the covenant declared upon is not supported by a valid consideration. "A sufficient consideration for a promise or contract is found in the compromise of a claim or right of action * * * and this is true of the compromise of a disputed or doubtful claim made in good faith and upon reasonable grounds, though in fact the claim is without merit and could not have been enforced in court * * *." 10 Tex.Jur. p. 138, Sec. 79.

Defendant asserts that the restriction or covenant set out in the quitclaim agreement upon which the instant suit is grounded is not a "covenant running with the land, and defendant not being a party to the agreement, the covenant was not binding or enforceable against defendant." Irrespective of whether or not the restrictive clause declared upon is a "covenant running with the land", the covenant under the pleadings and evidence in this record is enforceable in equity as against defendant, the assignee of Nenney, the covenantor. Defendant had actual and constructive notice of such covenant. Plaster v. Stutzman, Tex.Civ.App., 8 S.W.2d 750; Anderson v. Rowland, 18 Tex.Civ.App. 460, 44 S.W. 911; Graham v. Omar Gasoline Co., Tex.Civ.App., 253 S.W. 896; British-American Oil Producing Co. v. Buffington, 5 Cir., 116 F.2d 363; Couch v. Southern Methodist University, Tex.Civ. App., 290 S.W. 256; 14 Am.Jur. pp. 659, 660; Meade v. Dennistone, 173 Md. 295, 196 A. 330, 114 A.L.R. 1227.

It is thought that the observations made and authorities cited in the disposition of Point 1 are applicable to the matters presented under Points 3, 4, 5 and 7. Under the record as presented, the excluded deed complained of in Point 11 was not admissible and the defense of laches, complained of in Point 6, was not available to defendant.

For the reason above indicated, the judgment will be reversed and the cause remanded.