ANN CRAWFORD McCLURE, Chief Justice
Injecting fluids into an oil reservoir can, under the right conditions, enhance oil production.[1] At the same time, it may change the dynamic of a reservoir and damage surrounding production wells, or pollute fresh water resources.[2] Partly for these reasons, a party must obtain a permit from the Texas Railroad Commission (the Commission or Railroad Commission) to develop an injection well in an established field, and that process requires notification of some surrounding mineral and property owners.[3]
In this case, Trey Resources, Inc. (Trey) obtained the requisite permits from the Commission, but there is some dispute, unresolved on our record, as to whether the predecessor to Ring Energy, Inc. (Ring), which operated several nearby wells, got proper notice. Before Trey started its injection program, Ring filed suit in Andrews County seeking injunctive relief to stop the process because it claimed the water injection would cause it irreparable "waste" damage. The trial court ultimately dismissed the suit for want of jurisdiction.
We are faced with the narrow question, which appears to be one of first impression, as to whether a trial court outside of Travis County has the jurisdiction to enjoin a party with a valid permit from developing and using an injection well based on the claim that the injection well will cause imminent and irreparable injury to the complaining party. Texas law already allows a party to seek damages once the injection well is put to use if it did indeed caused "waste" to surrounding wells. We conclude that based on the text of the controlling statutes that pre-injury injunctive relief is available outside of Travis County.
FACTUAL SUMMARY
Based on the pled allegations in this suit, on September 6, 2012 Trey applied for nine permits from the Commission to *203 inject fluids into designated wells located in Andrews County. Stanford Energy, which is the predecessor to Ring, operated five wells in the immediate area. The Commission rules required Trey to provide a copy of the application to any surface owner or operator of a well within a half mile of the injection well, and also to publish notice of the application in the local paper. TEX.ADMIN.CODE § 3.46(c)(1)-(3)(2014)(Tex. R.R. Comm., Fluid Injection into Productive Reservoirs). Trey contends it substantially complied with the rule, while Ring pled that it did not. That issue is not before us. Ring (or its predecessor in interest) did not file a protest of the permits as Commission rules allowed, and it is uncontested that the Commission granted the applications without any formal hearing on January 17, 2013.
On September 23, 2013, and before any injection operations began, Ring filed suit against Trey in Andrews County. The suit first sought declaratory relief that the permits issued by the Commission were void ab initio . Next, the suit alleged that fluid injection would cause substantial damage to Ring's mineral interest, thus causing "waste." No specific explanation for how that waste would occur is contained in the pleading. Ring sought damages and equitable relief under TEX.NAT.RES.CODE ANN. § 85.321 (West 2011) which authorizes a cause of action in favor of an owner of an interest in property or production "that may be damaged" by waste. Ring further alleged that its interests were in imminent danger of irreparable harm, and sought a temporary restraining order, and a temporary and permanent injunction.
The parties agreed to several temporary restraining orders. Trey then filed a motion to dismiss for lack of subject matter jurisdiction. The motion argued that Ring failed to exhaust its administrative remedies before the Commission. Even at that, Trey contended any appeal of the Commission's order must be filed in Travis County. Ring's response conceded the motion as it applied to its declaratory relief claim seeking to invalidate the permits ab initio . It contended, however, that its claim for damages and injunctive relief under Section 85.321 were properly before the Andrews County trial court. The trial court granted the motion to dismiss. This appeal follows.
In a single issue, Ring contends that the trial court erred in dismissing its suit for lack of subject matter jurisdiction. If the injection wells do indeed actually cause injury, both sides apparently agree that damages are available. Trey additionally concedes that even before any damages are suffered, Ring can seek injunctive relief in Travis County. It maintains, however, any suit outside of Travis County is a collateral attack on a permit issued by the Commission. Ring views the issue as a simple application of Section 85.321 that allows equitable relief to prevent waste.
STANDARD OF REVIEW
Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review. Texas Natural Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 855 (Tex. 2002) ; In re Elamex, S.A. de C.V. , 367 S.W.3d 891, 897 (Tex.App.-El Paso 2012, orig. proceeding). When a challenge to subject matter jurisdiction is based only upon the pleadings, the trial court must determine if the plaintiff has alleged facts that affirmatively demonstrate its jurisdiction to hear the case. Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 226 (Tex. 2004) ; Elamex , 367 S.W.3d at 897. The pleadings are liberally construed in favor of the plaintiff. Id. If the pleadings do not affirmatively demonstrate jurisdiction, but do not negate it outright, the pleader should *204 be given the opportunity to amend. Elamex , 367 S.W.3d at 897. However, if the pleadings affirmatively negate jurisdiction, the trial court may grant the plea to the jurisdiction or the motion to dismiss without allowing the plaintiff an opportunity to amend. Id.
OVERVIEW OF PERMITTING PROCESS FOR INJECTION WELLS
We begin with a summary of the permitting process required for injection wells in operating production fields. Both the Texas Commission on Environmental Quality (TCEQ) and the Railroad Commission have statutory mandates to oversee injection wells. TEX.WATER CODE ANN. § 27.011. Generally, injection wells used for disposal of industrial waste falls under the purview of the TCEQ. Id. at § 27.051(a). Injection wells used for disposal of oil and gas wastes are regulated by the Railroad Commission. Id. at § 27.031 and § 27.051(a). The application process for both types of wells are set out by statute and by rules that the TCEQ and Railroad Commission are authorized to enact. Id. at § 27.015, § 27.033, § 27.051(a)(b); TEX.ADMIN.CODE § 3.46. Less well defined, but also under the Railroad Commission's purview, are injection wells used for secondary recovery, such as are at issue here. Id. at § 27.0511 (conditions for enhanced recovery wells).
The Railroad Commission by rule requires "any person who engages in fluid injection operations in reservoirs productive of oil, gas, or geothermal resources" to obtain a permit from the Commission. TEX.ADMIN.CODE § 3.46(a). The permit will only issue if the "injection will not endanger oil, gas, or geothermal resources or cause the pollution of freshwater strata unproductive of oil, gas, or geothermal resources." Id. The permitting process starts with an application. Id. at § 3.46 (b)(1)(A). The one page application form requests twenty six pieces of information, some technical in nature. See Form H-1 (05/2004) located at http://www.rrc.state.tx.us/media/2611/formh-1p.pdf. It also requires the applicant to provide, among other items, a map of wells located in a half mile radius from the proposed injection well, documentation of where usable water is found, and designated wells logs. Id. at Instructions, note 3 and 4.
The application itself must be mailed or delivered to any affected person, which includes the record owner of the surface tract on which the well is located, any Commission designated operator of a well within a half mile radius, the owner of any adjoining surface properties, and several governmental entities. TEX.ADMIN.CODE § 3.46 (c)(1)(2). The applicant must also publish a notice on a prescribed form in a newspaper of general circulation for the county where the well is to be located. Id. at § 3.46(c)(4). An interested person can file a protest within fifteen days of receipt of the application, or of publication, whichever is later. Id. at § 3.46(c)(5)(A). The Commission (or its delegate) will notice a hearing if it determines that a hearing is in the "public interest". Id. If there is no protest, the Commission (or its delegate) may "administratively approve the application." Id. at § 3.46(c)(6). The petition in this case alleges that the injection applications were all administratively approved without a formal hearing.
Once approved, the Commission can modify, suspend, or terminate the permit "for just cause" after notice and an opportunity for hearing, but only for several specified reasons. Id. at § 3.46 (d)(1)(A)-(G). Some of those reasons include a material change in conditions, the contamination of fresh water, violation of the terms of the permit, or that is there is a "waste *205 of oil, gas, or geothermal resources is occurring or is likely to occur as a result of the permitted operations." Id. at § 3.46 (d)(1)(A)(B)(E),(G). Rule 3.46 does not provide any formal mechanism for an interested party to intervene and challenge the permit if they miss the fifteen day deadline for filing a protest, nor to intervene after the Commission has approved a permit.[4]
JUDICIAL REVIEW
A party to any proceeding before the Commission is generally entitled to judicial review. That right is found several statutes. See TEX.UTIL.CODE ANN. § 105.001(a) (West 2007)("Any party to a proceeding before the railroad commission is entitled to judicial review under the substantial evidence rule."); see also TEX. GOV'T CODE ANN. § 2001.171 (West 2016) (a person "who is aggrieved by a final decision in a contested case" is entitled to seek judicial review.). Most germane here, however, is TEX.NAT.RES.CODE ANN. § 85.241 which provides: that "[a]ny interested person who is affected by the conservation laws of this state or orders of the commission relating to oil or gas and the waste of oil or gas, and who is dissatisfied with any of these law or orders, may file suit against the commission" in Travis County. An "order" of the Commission can include its approval of a permit. See id. at § 85.202(a)(8). Accordingly, interested parties to Commission proceedings have been able to obtain judicial review of orders permitting injection wells. See R.R. Commn. of Texas v. Texas Citizens for a Safe Future and Clean Water , 336 S.W.3d 619, 624 (Tex. 2011) (aggrieved party challenged scope of "public interest" standard used by Commission for permitting of injection wells); R.R. Commn. of Tex. v. Manziel , 361 S.W.2d 560, 565 (Tex. 1962) (aggrieved party was able to challenge permit, albeit unsuccessfully); see also Wrather v. Humble Oil & Refining Co. , 147 Tex. 144, 214 S.W.2d 112, 114 (Tex. 1948) (suit to enjoin permit to drill production well filed under predecessor to Section 85.241 ); Murphy v. Turman Oil Co. , 97 S.W.2d 485, 485 (Tex.Civ.App.-Austin 1936, writ ref'd) (same).
As an appeal from an administrative agency, the courts will employ a distinct standard for review. Review of a state administrative agency's decision is generally restricted to those decisions that prejudice substantial rights of the complaining party if the decision is in violation of a constitutional or statutory provision, in excess of the agency's authority, made through unlawful procedure or affected by other error of law, not reasonably supported by substantial evidence, or arbitrary or capricious or characterized by an abuse of discretion. TEX. GOV'T CODE ANN. § 2001.174(2)(A)-(F) ; Railroad Comm'n v. Torch Operating Co., 912 S.W.2d 790, 792-93 (Tex. 1995) ; see also City of El Paso v. Pub. Util. Com'n of Texas , 883 S.W.2d 179, 185 (Tex. 1994) ; SWEPI LP v. R.R. Commn. of Texas , 314 S.W.3d 253, 259 (Tex.App.-Austin 2010, pet. denied).
Once a permit issued by the Commission has actually been put to use, Texas courts are available to redress the consequences of a permit holder's actions. The Amarillo *206 Court of Appeals likened the permit to a driver's license which allows one to drive a car, but does not provide immunity for any resulting damages:
Specifically, securing a permit does not immunize the recipient from the consequences of its actions if those actions affect the rights of third parties. Nor does it authorize the recipient to act with impunity viz third parties. Rather, obtaining a permit simply means that the government's concerns and interests, at the time, have been addressed; so, it, as a regulatory body, will not stop the applicant from proceeding under the conditions imposed, if any. ... The situation is much like getting a driver's license. While some may think that the license allows them to drive upon a neighbor's lawn, it does not. The home owner may still undertake effort to protect his yard or recover for damages suffered. Nor does the license allow them to ignore other laws and restrictions whether related to or unrelated to driving.
Berkley v. R.R. Commn. of Texas , 282 S.W.3d 240, 243 (Tex.App.-Amarillo 2009, no pet.). The Texas Supreme Court adopted this reasoning in FPL Farming Ltd. v. Envtl. Processing Sys., L.C. , 351 S.W.3d 306, 310-11 (Tex. 2011), expressly rejecting the contention that the holder of an injection well permit was immunized from a subsurface trespass claim simply by virtue of the permit.
The rationale flows in part from prior cases holding that a permit is a "negative pronouncement" that "grants no affirmative rights to the permittee." Magnolia Petroleum Co. v. R.R. Comm'n, 141 Tex. 96, 170 S.W.2d 189, 191 (1943). In Magnolia , for instance, one party obtained a permit to drill a well on land for which title was disputed. The Supreme Court held that even though the Commission could consider whether an applicant "appears" to have title, the issued permit did not provide the applicant with any authority to drill on land that was not his, or shield him from tort liability or an injunction action should it be determined that he is not the rightful owner of the parcel. Id. at 190-91.
Central to the dispute before us, Section 85.321 of the Natural Resources Code specifically authorizes a judicial remedy in relevant part as follows:
A party who owns an interest in property or production that may be damaged by another party violating the provisions of this chapter that were formerly a part of Chapter 26, Acts of the 42nd Legislature, 1st Called Session, 1931, as amended, or another law of this state prohibiting waste or a valid rule or order of the commission may sue for and recover damages and have any other relief to which he may be entitled at law or in equity. Provided, however, that in any action brought under this section or otherwise, alleging waste to have been caused by an act or omission of a lease owner or operator, it shall be a defense that the lease owner or operator was acting as a reasonably prudent operator would act under the same or similar facts and circumstances.
TEX.NAT.RES.CODE ANN. § 85.321. Section 85.322, which immediately follows, provides that no suit by or against the Commission "shall impair or abridge or delay a cause of action for damages or other relief" that a land owner, or producer might have for violation of a rule or order of the Commission. Id. at § 85.322.
No doubt, Section 85.321 creates a private cause of action for breach of Commission imposed duties, including the breach of the statutory duty not to commit waste. Exxon Corp. v. Emerald Oil & Gas Co., L.C. , 331 S.W.3d 419, 422 (Tex. 2010) (recognizing a cause of action, but *207 holding it did not extend to subsequent lessees); HECI Exploration Co. v. Neel , 982 S.W.2d 881, 890-91 (Tex. 1998) ("When a mineral or royalty interest owner is damaged by a violation of the conservation laws of this state or a Railroad Commission rule or order, section 85.321 of the Texas Natural Resources Code also expressly provides for a damage suit against the offending operator."). Waste is declared unlawful and is prohibited under TEX.NAT.RES.CODE ANN. § 85.045. "Waste" specifically includes "drowning with water a stratum or part of a stratum that is capable of producing oil or gas or both in paying quantities." Id. at § 85.046(a)(2). Ring's pleadings, which we must accept as true for the purposes of establishing jurisdiction, allege that the injection wells will cause this kind of waste.
This background brings us to the heart of the dispute. Trey acknowledges that once its injection operations commence, and if it indeed damages Ring, that a claim for damages in the courts might be cognizable under Section 85.321. Trey also acknowledges that some form of equitable relief might also be available before the injection well is put to use, but only in an action filed in Travis County challenging the order authorizing the permit. But it contends that the Andrews County district court lacks subject matter jurisdiction to prohibit the injection operation, and thus effectively invalidate the Commission's permits. Ring counters that the plain language of Section 85.321 grants the courts of this state jurisdiction to hear not only suits for damages, but also claims for equitable relief, which includes claims for injunctive relief.
When Is Equitable Relief Available?
Whether Ring has a pre-injury equitable remedy turns on the text of the legislation before us. In interpreting the text of the statute, we start with its plain language. McIntyre v. Ramirez , 109 S.W.3d 741, 745 (Tex. 2003). Our primary objective is to give effect to the Legislature's intent. Tex.Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 635 (Tex. 2010). We first look to the plain meaning of the text as the sole expression of legislative intent, "unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results." Abutahoun v. Dow Chem. Co. , 463 S.W.3d 42, 46 (Tex. 2015), citing Tex. Lottery Comm'n , 325 S.W.3d at 635. We read the statute as a whole, presuming the Legislature purposefully included each word, In re M.N. , 262 S.W.3d 799, 802 (Tex. 2008), and construe the enactment to avoid rendering any word or provision meaningless. Kallinen v. City of Houston , 462 S.W.3d 25, 28 (Tex. 2015) (per curiam). We are also bound by rules of construction found in Chapters 311 and 312 of the Government Code. See TEX.GOV'T CODE ANN. §§ 311.002, 312.001 (West 2005).
With these standards in mind, we turn to the statute at hand. Stripped to its core, Section 85.321 states: "[a] party that may be damaged by another party['s] ... waste ... may sue for and recover damages and have any other relief to which he may be entitled at law or in equity ." [Emphasis added]. Id. at § 85.321. Injunctive relief has historically been equated with equitable relief. Alex Sheshunoff Mgt. Services, L.P. v. Johnson , 209 S.W.3d 644, 656 n.8 (Tex. 2006) ("Further, it is axiomatic that injunctive relief is an equitable remedy, subject to equitable principles."); Rogers v. Daniel Oil & Royalty Co. , 130 Tex. 386, 110 S.W.2d 891, 894 (Tex. 1937) ("A pure suit for injunction is classed as an action for equitable relief."). The parties do not argue that Section 85.321 does not include *208 injunctive relief. Their arguments focus on when and where it might be available.
Ring focuses on the phrase "may be damaged" as evidence that the statute contemplates future, but as yet theoretical damages, and thus equitable relief is available. Trey argues in part that the term "recover damages" necessarily requires that some damages have been incurred, and thus this statute limits any injunctive relief to situations where the permit has already been put to use. It bolsters this claim with language from the proviso that follows, which states "that in any action brought under this section or otherwise, alleging waste to have been caused, " a reasonably prudent operator defense is available.
Both parties' arguments fall short of giving clear meaning to the statute. A grammar construct undermines Ring's contention that the phrase "may be damaged" necessarily contemplates future damages. The word "may" is used here as a modal auxiliary verb. See Webster New Universal Unabridged Dictionary, p 1189 ("may" can be used as auxiliary verb). A modal auxiliary verb's function can either be to indicate tense (i.e. something in the past, present, or future) or denote probability (i.e., how likely something might be to occur). See Altizer v. Commonwealth of Virginia , 63 Va.App. 317, 757 S.E.2d 565, 568 (Va.App. 2014), citing Mary Barnard Ray & Jill J. Ramsfield, Legal Writing: Getting It Right and Getting It Written, 452 (West 2010); Estrada v. State , 313 S.W.3d 274, 282 n.5 (Tex.Crim.App. 2010) (noting differing uses of modal auxiliary words). Modal auxiliary verbs cannot be understood or defined in isolation, but rather obtain meaning from their context. Altizer , 757 S.E.2d at 568. That is, the Legislature might have used the term "may be damaged" only in the sense of expressing some degree of probability of an event, and not in reference to the timing of those possible damages.[5]
But neither does Trey's construction provide clear evidence of the Legislature's intent. Trey focuses on the phrase "may sue for and recover damages and have any other relief to which he may be entitled at law or in equity" as an indication that one must first have some damages to invoke the equitable remedy. It correctly notes that prior cases involving suits under this section have all involved claims where the plaintiff contended actual damages had already been incurred. See e.g. Emerald Oil & Gas , 331 S.W.3d at 422 ; HECI Exploration , 982 S.W.2d at 890-91. But simply because parties in the past have not sought pre-injury injunctive relief does not mean it is not available; it merely means the situation has not yet presented itself to an appellate court. The text of the statute still controls our disposition.
Turning to the text of the statute, the question here is whether the clause allowing equitable relief ("and have any other relief to which he may be entitled at law or in equity") is tied to, and limited by the phrase immediately preceding it ("may sue for and recover damages") such that only someone who has incurred actual damages might seek equitable relief. The last antecedent canon might provide some support for that construction. It holds "that a qualifying phrase in a statute or the Constitution must be confined to the words and phrases immediately preceding it to which it may, without impairing the meaning of the sentence, be applied."
*209 Spradlin v. Jim Walter Homes, Inc., 34 S.W.3d 578, 580 (Tex. 2000) ; City of Corsicana v. Willmann , 147 Tex. 377, 216 S.W.2d 175, 176 (1949).
Punctuation "will often determine whether a modifying phrase or clause applies to all that preceded it or only to a part." Sullivan v. Abraham , 488 S.W.3d 294, 297 (Tex. 2016), citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, 161 (2012). Thus, a properly placed comma could cancel the last antecedent canon and vice versa. Id. ; see also In re ReadyOne Industries, Inc. , 394 S.W.3d 689, 695 (Tex.App.-El Paso 2012, orig. proceeding) (discussing significance of Oxford or serial comma); Ludwig v. State, 931 S.W.2d 239, 242 (Tex.Crim.App. 1996) (generally, "a comma should precede a conjunction connecting two coordinate clauses or phrases in a statute in order to prevent the following qualifying phrases from modifying the clause preceding the conjunction"). Here, if a comma were placed after the phrase "recover damages" and before the conjunction "and," which separates the second and third terms in the series, it might have more distinctly indicated that recovering damages and equitable relief were not tied together. And while it may be tempting to focus on the absence of the comma here as support for Trey's construction, the history of the enactment dictates otherwise.
The present Natural Resources Code finds its origin in the Act of August 12, 1931 42nd Leg., 1st Called Sess., ch. 26, 1931 Gen. Session Law Pamp. 46. The predecessor to Sections 85.321 and 85.322 originally appeared together in reverse order, and the relevant language at issue here read:
Any party owning any interest in any property or production which may be damaged by any other party violating this Act or any other statute of this State prohibiting waste or violating any valid rule, regulation or order of the Commission, may sue for and recover such damages, and have such other relief as he may be entitled to in law or equity.
The serial comma is apparent in the earlier text. The recodification of the prior law into the Natural Resources Code was not intended to make substantive changes. TEX.NAT.RES.CODE ANN. § 1.001(a) (West 2011). Accordingly, if anything, the original placement of the comma indicates the Legislature set off equitable relief as something distinct from the damages relief available under the act.
Trey also focuses on the proviso in Section 85.321 which states that:
Provided, however, that in any action brought under this section or otherwise, alleging waste to have been caused by an act or omission of a lease owner or operator, it shall be a defense that the lease owner or operator was acting as a reasonably prudent operator would act under the same or similar facts and circumstances.
[Emphasis added]. It contends the use of the past tense "have been caused" shows the legislation is limited to situations where the complained of actions have already occurred, and not merely about to occur. We first note the Code Construction Act provides that "[w]ords in the present or past tense include the future tense." TEX.GOV'T CODE ANN. § 312.003 (West 2013). Thus the use of the past tense loses its import. Second, the proviso was added to the statute at a later time, and creates a defense to a particular subset of claims that could be brought under Section 85.321. Act of June 20, 1987, 70th Leg., ch. 1071, § 1, 1987 Gen. Session Law 3608. We do not believe it is meant as a limitation on the type of claims that may be brought in the first place.
*210 Finding no clear answer in either party's construction of Section 85.321, we examine the act as a whole. Legislative intent must be ascertained from the entire act and not from isolated portions thereof. Calvert v. Texas Pipe Line Co. , 517 S.W.2d 777, 781 (Tex. 1974). The Natural Resources Code was codified in 1977. Act of June 15, 1977, 65th Leg. R.S., ch. 87, 1977 Tex. Gen. Laws 2345. Section 85.321 is contained in a subchapter, entitled "Damages." Id. at 2527. Preceding that subchapter, are nineteen sections, collected under a subchapter entitled "Suits Challenging the Validity of Laws and Orders." Id. at 2513.[6] Included there is Section 85.241 which authorizes a suit by "[a]ny interested person who is affected by the conservation laws of this state or orders of the commission relating to oil or gas and the waste of oil or gas, and who is dissatisfied with any of these laws or orders ..." against the Commission or its members. NAT.RES.CODE ANN. § 85.241. That suit must be filed in Travis County. Id. Subsequent sections provide that the suit must be expedited,[7] employ a designated burden of proof,[8] include notice to the Commission,[9] allow for intervention by other interested parties,[10] comply with specified bond requirements,[11] and be appealed under certain procedures to the Third Court of Appeals.[12]
While it might seem a strange legislative scheme that would set out detailed provisions for suits to be filed in Travis County, yet simultaneously allow litigants to go to their local courthouse to obtain the similar relief, the text of Section 85.322 cannot be read any other way. That section provides:
None of the provisions of this chapter that were formerly a part of Chapter 26, Acts of the 42nd Legislature, 1st Called Session, 1931, as amended, no suit by or against the commission , and no penalties imposed on or claimed against any party violating a law, rule, or order of the commission shall impair or abridge or delay a cause of action for damages or other relief that an owner of land or a producer of oil or gas, or any other party at interest, may have or assert against any party violating any rule or order of the commission or any judgment under this chapter.[13]
This section contemplates that even were some other proceeding filed pursuant to Section 85.242 et. seq. , the aggrieved party would still have the right to pursue a claim for damages, and for equitable relief. And any suit against the Commission cannot "impair or abridge or delay" the land owner or producer's cause of action for damages "or other relief." Id. We simply cannot square this legislative language with Trey's construction which requires only an appeal through the rubric of Section 85.242.
Trey's additional argument that any suit must be filed in Austin also stumbles on *211 the text of the statute. Section 85.241 indeed requires that any suit against the Commission or its members be filed in Austin. At the same time, Section 85.321 creates a cause of action for damages and injunctive relief, and Section 85.322 allows such suit against any party who violates a law, rule, or order of the Commission. Section 85.322 contains no venue provision, indicating to us that a Section 85.322 suit is governed by the venue restrictions applicable to any suit. The general venue provisions permit a suit to be filed where all or a substantial part of the events giving rise to the claim occurred, which would often be outside of Travis County. TEX. CIV. PRAC. & REM. CODE ANN. § 15.002 (West 2002).
Exclusive Jurisdiction
We also disagree with Trey's argument that the Commission has exclusive jurisdiction .over injection wells until all administrative avenues have been exhausted. The Texas Constitution gives district courts jurisdiction over "all actions" unless "exclusive" jurisdiction is "conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8. District courts are courts of general jurisdiction and generally have subject matter jurisdiction absent a showing to the contrary. In re Entergy Corp. , 142 S.W.3d 316, 322 (Tex. 2004) (orig.proceeding), citing Dubai Petroleum Co. v. Kazi , 12 S.W.3d 71, 75 (Tex. 2000). A similar presumption does not exist for administrative agencies, which may exercise only the powers conferred upon them "in clear and express statutory language." Id. citing Subaru of Am. v. David McDavid Nissan , 84 S.W.3d 212, 220 (Tex. 2002).
An administrative agency has exclusive jurisdiction when the Legislature has granted it sole authority to make an initial determination in a dispute. In re Entergy Corp. , 142 S.W.3d at 321-22. If an agency has exclusive jurisdiction, a party typically must exhaust all administrative remedies before seeking judicial review. David McDavid Nissan , 84 S.W.3d at 221 ; Cash America Int'l, Inc. v. Bennett , 35 S.W.3d 12, 18 (Tex 2000). The requirement that parties exhaust administrative remedies does not deprive them of their legal rights. Clint Indep. Sch. Dist. v. Marquez , 487 S.W.3d 538, 544 (Tex. 2016). Rather, it acknowledges the Legislature's intent that "the appropriate body adjudicates the dispute" first and thereby "ensure[s] an orderly procedure to enforce those rights." Id. at 544, quoting Essenburg v. Dallas County , 988 S.W.2d 188, 189 (Tex. 1998) and City of Houston v. Rhule , 417 S.W.3d 440, 441 (Tex. 2013). If the outcome of the administrative process leaves the party dissatisfied, they may file suit and have the courts review the agency's decision. Tex. Water Comm'n v. Dellana, 849 S.W.2d 808, 810 (Tex. 1993).
Our sister court in Eastland recently considered the doctrine of exclusive jurisdiction in the context of injection wells. In re Discovery Operating, Inc. , 216 S.W.3d 898 (Tex.App-Eastland 2007, orig. proceeding). There, one operator sued another contending that several injection wells were damaging its interests. The suit asserted negligence, negligence per se , and common law and statutory waste claims. Id. at 901. An earlier pled claim for injunctive relief had been dropped. Id. at 901, n.1. The trial court abated the suit until the Commission could decide whether one party had violated any Commission rules, regulations or permits.
In a mandamus proceeding challenging that abatement, the Eastland court first held that the Commission did not have exclusive jurisdiction over the injection wells. Despite the statutory provisions *212 vesting authority in the Commission to permit and regulate injection wells, the Legislature also expressly allowed for a cause of action in Section 85.321 and 85.322 which belied exclusive jurisdiction with the Commission. Id. at 902-03. With that conclusion we agree, and similarly reject Trey's contention that the Commission has exclusive jurisdiction over the claims here.
Primary Jurisdiction
The doctrine of primary jurisdiction is judicially created and allocates power between courts and agencies when both have authority to make initial dispute determinations. David McDavid Nissan, 84 S.W.3d at 221. In other words, "primary jurisdiction is prudential whereas exclusive jurisdiction is jurisdictional." Id. at 220. "Trial courts should allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations." Id. at 221, citing Gregg v. Delhi-Taylor Oil Corp. , 162 Tex. 26, 344 S.W.2d 411, 413 (1961). When an agency has primary jurisdiction, abatement by the trial court is appropriate so that the agency has an opportunity to act on the matter. Butnaru v. Ford Motor Co. , 84 S.W.3d 198, 208 (Tex. 2002)
Trey does not separately argue that primary jurisdiction should apply here. The relief it sought below was dismissal, and not abatement. We nonetheless consider primary jurisdiction. We start with the Eastland court's decision of In re Discovery , which also declined to hold the Commission had primary jurisdiction over the issues in that case. 216 S.W.3d at 904-05. The court first noted the limitations on primary jurisdiction as found in prior case law. For instance, in Gregg v. Delhi-Taylor Oil Corp. , the supreme court affirmed the power of a court to issue an injunction to prevent a fracking scheme involving subsurface trespass. 162 Tex. 26, 344 S.W.2d 411, 412 (1961). The court reasoned that the trespass question presented was primarily judicial in nature. "Where the issue is one inherently judicial in nature (as we think the question of trespass is), the courts are not ousted from jurisdiction unless the Legislature, by a valid statute, has explicitly granted exclusive jurisdiction to the administrative body." Id. at 415. Likewise in Hastings Oil Co. v. Texas Co. , the court held that a court retained the right to issue an injunction to prevent one landowner from slant drilling such that the well would actually intrude on another's land. 234 S.W.2d 389, 397-98 (Tex. 1950).
Trey distinguishes these case by noting that the Texas Supreme Court later dispatched the trespass-based theories in R.R. Commn. of Tex. v. Manziel , 361 S.W.2d 560, 568-69 (Tex. 1962) ("The technical rules of trespass have no place in the consideration of the validity of the orders of the Commission."). Manziel , however, addressed the merits of a trespass-based theory, and not the framework for analyzing exclusive or primary jurisdiction arguments.
Hastings and Gregg declined to defer to the Commission on trespass issues over which the courts at the time were able to resolve. By the same token, courts have not deferred to the Commission over issues of title ownership of property. See Amarillo Oil Co. v. Energy-Agri Prods., Inc., 794 S.W.2d 20, 26 (Tex. 1990) ("The cause is properly within the jurisdiction of the courts because the Railroad Commission has no authority to determine title to land or property rights.");
*213 R.R. Comm'n v. City of Austin, 524 S.W.2d 262, 267-68 (Tex. 1975) ("This Court has also held on several occasions that the Commission does not have power to determine title to land or property rights."); Jones v. Killingsworth, 403 S.W.2d 325, 328 (Tex. 1965) ("The Railroad Commission has no power to determine property rights."); Ryan Consol. Petroleum Corp. v. Pickens, 155 Tex. 221, 285 S.W.2d 201, 207 (1955) ("[The Commission] has not been given the power to determine property rights as between litigants."). Nor do the courts defer to the Commission when its rules and procedures do not give a litigant an available remedy. Foree v. Crown Central Petroleum Corp., 431 S.W.2d 312, 316 (Tex. 1968) (courts have jurisdiction when the Railroad Commission is powerless to grant the relief sought and to make incidental findings necessary to justify the relief).
The Eastland court similarly reasoned that issues of negligence and waste were also inherently judicial, and held the Commission does not have primary jurisdiction. In re Discovery , 216 S.W.3d at 904-05. The only distinguishing fact between In re Discovery and this case is that here, no actual waste has as yet occurred. While that distinction presents a basis upon which to build an exception, ultimately the lack of a clear remedy before the Commission convinces us that the doors to the courthouse doors should not be so swiftly shut.
Under the Commission rules, an interested person must quickly file their protest to protect their rights before the Commission (and are given as little as fifteen days to do so). TEX. ADMIN. CODE § 3.46(c)(1). If the interested party fails to file a protest, or the Commission declines to grant a hearing, then the administrative record may contain little more than the permit application. Applying the substantial evidence review standard, how would an aggrieved person in those circumstances obtain any meaningful review of the waste considerations of such a permit? After the permit is issued, only the Commission can then move to cancel it, and then only for a limited category of reasons. No provision is expressly made for a party to intervene and assert those reasons. We are accordingly unconvinced that Ring could file an appeal of the Commission's failure to seek cancellation of the permits it had earlier approved.
We acknowledge Trey's concern that injunctive relief has the effect of negating a permit issued by the Commission. The permit itself should have only issued after some consideration by the Commission of potential waste that the injection well might cause. Nonetheless, we believe the safeguards built into the issuance of injunctive relief militate against the risk of abuse. For the temporary injunction sought here, a court could not grant Ring relief unless it pled and proved three elements: (1) a cause of action against Trey; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.[14] See Butnaru , 84 S.W.3d at 204. Any applicant for either a temporary restraining order, or temporary injunction must execute a bond with good and sufficient sureties to protect the other party if the restraining order or temporary injunction is dissolved in whole or part. TEX.R.CIV.P. 684. Given the substantial sums at stake in the oil and gas industry, an adequately set bond requirement *214 would deter all but the most aggrieved applicants.
COLLATERAL ATTACK
Trey also contends that Ring's pleading is effectively a collateral attack on the permit itself. Trey cites a number of cases in support of the general proposition that one cannot collaterally attack an order of the Commission, and cannot do so outside of Travis County. Some of the cases are distinguishable because they do not involve a claim filed under Section 85.321,[15] some do not support Trey' position, and none trumps the equitable legal proceeding contemplated by Section 85.321 and 85.322.
Trey cites to this court's decision in Zimmerman v. Texaco, Inc. , 409 S.W.2d 607 (Tex.Civ.App.-El Paso 1966) writ refused n.r.e., 413 S.W.2d 387 (Tex. 1967), for our holding that a Gaines County district court did not have jurisdiction to pass on whether a well testing procedure, previously approved by the Commission, was causing drainage. Id. at 609-10. We held the Gaines County court lacked jurisdiction because it amounted to a collateral attack on the Commission's order. Id. at 613. The Texas Supreme Court, however, penned a short opinion in denying the writ, stating "[i]n our opinion, the District Court of Gaines County, Texas had jurisdiction of this cause under the allegations contained in plaintiff-petitioner's first amended original petition." 413 S.W.2d 387, 388 (Tex. 1967).
Trey cites Looney v. Sun Oil Co. , 170 S.W.2d 297 (Tex.Civ.App.-Texarkana 1943, writ ref'd w.o.m.) for the proposition that the exclusive jurisdiction of actions to annul the Commission's orders are vested in Travis County. In that case, a party by deed was limited to drilling one well on a particular tract of land, but obtained permits from the Commission to drill several additional wells. Id. at 298. A party with standing under the deed filed suit for specific performance to limit the number of wells to that allowed by the deed. Id. The Looney court indeed noted the general proposition that "jurisdiction is vested in the district courts of Travis County" for actions to set aside or annul the orders of the Commission. Id. at 299. But in the next paragraph the court stated the "fact that the relief here sought, if sustained, may have the effect, indirectly, of destroying the value of defendant's permit to operate wells Nos. 2, 3 and 4, will not deprive the District Court of Gregg County of jurisdiction *215 to hear and adjudicate this issue of the enforcement of the alleged contractual rights." Id. at 300 (the court ultimately denied the equitable relief because all the necessary parties had not been joined).
Trey also directs us to Tide Water Oil Co. v. Railroad Commission , 76 S.W.2d 553 (Tex.Civ.App.-Austin 1934, no writ) for the proposition that a district court in a county other than Travis County has no jurisdiction to determine the validity of the Commission's order in a direct proceeding brought for that purpose. There, a party had filed suit in Travis County to overturn a Commission order and also filed suit in Rusk County to determine title. Id. at 554. The Travis County court denied injunctive relief, which was affirmed in part because: "[i]f such injunction were necessary to preserve the subject-matter of the suit until final adjudication of the issue of title could be had, clearly the district court of Rusk county had authority, upon the proper showing made by appellant, to issue, and it would have been its duty to issue, such injunction, without interference from the district court of Travis County." Id. at 555. Tide Water Oil thus falls in the basket of those cases where non-Travis County courts retain jurisdiction over inherently judicial issues, such as land title.
In Arkla Exploration Co. v. Haywood, Rice & William Venture , 863 S.W.2d 112, 116 (Tex.App.-Texarkana 1993, writ dism'd by agr.), one party claimed the other's operation of a gas well caused drainage, which is actionable both as negligence and a violation of Commission rules. Id. at 114. The suit was abated so that the Commission could make findings as to whether any of its rules were violated. The Commission did so, and the issue before the court was whether those specific findings could be collaterally attacked. The court concluded they could not. But unlike Arkla , we have no specific findings from the Commission. Had the case below been stayed and remanded to the Commission for specific findings on a complete record, we might have more confidence that the Commission's expertise was actually applied to the waste potential for the nine wells at issue.[16]
Concluding that none of the authorities cited directly addresses our situation here, and looking to the language of Sections 85.321 and 85.322 in the context of the entire Act, we conclude the Legislature intended to allow pre-injury injunctive relief in the county where the injury is threatened. Ring of course carries a significant burden to demonstrate the requisites for injunctive relief. Whether it can ever meet that burden is not before us. But the trial court has jurisdiction to at least hear Ring's claim, and we accordingly reverse its order to the contrary.
Hughes, J., not participating

See Paula C. Murray, Frank B. Cross, The Case for A Texas Compulsory Unitization Statute , 23 St. Mary's L.J. 1099, 1139-1143 (1992) (discussing potential of production through secondary recovery methods).

The process and issues that arise between operators is further described in R.R. Comm'n of Tex. v. Manziel , 361 S.W.2d 560, 562-65 (Tex. 1962).

See Tex.Water Code Ann. § 27.0511 (West 2008) (noting permit requirement for enhanced recovery injection wells); id. at § 27.051(b)(noting permit requirements generally); id. at § 27.003 (stating policy to protect fresh water); Tex.Admin.Code § 3.46(a),(c)(1)(2014)(Tex. R.R. Comm., Fluid Injection into Productive Reservoirs) (notice requirements for injection well permits).

The Commission's general procedural rules allow that "any person or agency who has a justiciable or administratively cognizable interest and who is not an applicant, petitioner, complainant, respondent, or protestant and who desires to be designated as a party in any contested case before the commission may file a petition for leave to intervene no later than five days prior to the hearing date." Tex.Admin.Code Rule 1.64 (a)(1991)(Tex. R.R. Comm., Intervention). This rule might permit a party who missed the fifteen day response period to intervene, but if no actual hearing is set, the timing of the petition under this rule seems problematic.

"Modals also lack productive past tense forms. It is true that could, might, should, and would originated in Germanic as past tense forms of can, may, shall, and will. But today, only could can serve as the past tense of can , and that only in certain contexts." http://www.ling.upenn.edu/~beatrice/syntax-textbook/box-modals.html.

A statutory heading does not limit or expand a statute's meaning, Tex.Gov't Code Ann. § 311.024, but might inform as to the Legislature's intent. In re United Servs. Auto. Ass'n , 307 S.W.3d 299, 307-08 (Tex. 2010).

Id. at § 85.242.

Id. at § 85.243.

Id. at § 85.245.

Id. at § 85.246.

Id. at §§ 85.248, to 85.251.

Id. at §§ 85.253 to 85.259.

As with Section 85.321, the original text of Section 85.322 from the 1931 law contained a comma setting off the phrase "or other relief" from the phrase "a cause of action for damages". Act of August 12, 1931 42nd Leg., 1st Called Sess., ch. 26, 1931 Gen. Session Law Pamp. 46.

The pleading here sought an injunction under Tex.Civ.Prac.&Rem.Code § 65.011(5) (West 2008). We note that Section 65.012 has specific requirements for injunctive relief when the relief prohibits "subsurface drilling or mining operations" and requires showing of not only an injury, but also that the party against whom "the injunction is sought is unable to respond in damages for the resulting injuries." Id. at § 65.012.

E.g. Magnolia Petroleum Co. v. New Process Production Co. , 129 Tex. 617, 104 S.W.2d 1106, 1111 (1937) (actual issue in the case was whether the supreme court should issue writ of prohibition to enforce its earlier judgment, or whether acts complained of were taken under newly issued drilling permits); Ex parte Lee , 127 Tex. 256, 93 S.W.2d 720, 723-24 (1936) (deciding in habeas proceeding whether Travis County trial court had authority to hold party in contempt for violating its temporary restraining order); Mulvey v. Mobil Producing Texas and New Mexico Inc. , 147 S.W.3d 594, 602 (Tex.App.-Corpus Christi 2004, pet. denied) (suit based on claim of fraud before Commission in issuing permits amounted to collateral attack); Lesikar v. Rappeport , 33 S.W.3d 282, 316 (Tex.App.-Texarkana 2000, pet. denied) (holding district court improperly issued a temporary injunction granting relief as to who was operator under lease, neither issues of waste or Section 85.321 were at issue); Exxon Corp. v. First Nat. Bank of Midland , 529 S.W.2d 110, 113-14 (Tex.Civ.App.-El Paso 1975, writ ref'd n.r.e.) (trial court order expressly stating that Railroad Commission order was not "binding upon or of any force or effect as to the oil and gas rights of the State of Texas or surface rights appurtenant thereto" was an improper collateral attack on the order itself); Altgelt v. Texas Co. , 101 S.W.2d 1104, 1106 (Tex.Civ.App.-Austin, 1937, writ. dism'd), citing general maxim that Travis County has exclusive jurisdiction, but deciding that Travis County could hear title dispute, especially when there was no pending action in other county, and no issue of trespass to try title were raised).

Justice Bleil dissented in Arkla , contending the case involved more than simple violations of Commission rules, because it also included a negligence claim for which a cause of action is allowed by statute. 863 S.W.2d at 122 (Bleil, J. dissenting). Another case relied by the Arkla majority, and by Trey here, is Sun Oil Co. v. Martin , 218 F.Supp. 618, 620 (S.D. Tex. 1963), aff'd, 330 F.2d 5 (5th Cir.1964) which held that even when there was no remand for Commission findings, the primary jurisdiction doctrine barred the suit. Judge Tuttle dissented at the Fifth Circuit, arguing that the predecessor to Section 85.321 answered the primary jurisdictional inquiry. 330 F.2d at 8 (Tuttle, J., dissenting). The Arkla majority noted that it reserved the question of how the case would be resolved had there been no remand for fact findings by the Commission. 863 S.W.2d at 116 ("We do not, therefore, reach the question of the proper disposition when there has been no Railroad Commission determination.").